CLERMONT H. WILCOX, Appellant, *v.* GEORGE B. McCLELLAN, as Mayor of the City of New York, et al., Constituting the BOARD OF ESTIMATE AND APPORTIONMENT OF THE CITY OF NEW YORK, Respondents.

1. NEW YORK (CITY OF) — CONSTITUTIONALITY OF ACTS TRANSFERRING TO BOARD OF ESTIMATE AND APPORTIONMENT POWER TO GRANT FRANCHISES. Chapters 629, 630 and 631 of the Laws of 1905, relating to the powers and duties of the board of estimate and apportionment and the board of aldermen of the city of New York, and transferring to the board

of estimate and apportionment the power to grant franchises, are not unconstitutional because at the time of their passage the board of aldermen constituted the sole authority having control of the streets within the meaning of the Constitution. Assuming this to be true, which it is not, there is no restriction upon the power of the legislature to take such authority away from one body of local authorities and to transfer it to some other city board or department. Such authorities have no vested right to the continuance of any public powers or duties conferred upon them, and what the legislature can confer it can transfer.

2. CUMULATIVE VOTING IN BOARD. The system of cumulative voting in the board of estimate and apportionment, authorized by the charter, does not prevent the legislature from giving to it the power to grant franchises because a minority of the individuals composing the board, by a combination of votes, may be able to determine a question before it; since there is no constitutional restriction upon providing for cumulative voting in such boards, it being a question of policy, not power; and under the circumstances attendant upon the organization of Greater New York as a city it would be unjust and unfair to permit each member to vote *per capita.*

3. HOME RULE. The statutes not assuming to appoint any one to a local or other office, but simply imposing new and additional duties upon the board of estimate and apportionment which had theretofore been performed by the board of aldermen, the so-called home rule provision of the Constitution (Art. 10, § 2) has no application.

*Wilcox* v. *McClellan,* 110 App. Div. 378, affirmed.

(Argued March 6, 1906; decided April 24, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 17, 1906, which affirmed a judgment of Special Term sustaining a demurrer to the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*L. Laflin Kellogg* and *Alfred C. Petté* for appellant. The statutes are in clear violation of the home rule principle as secured to cities by article 10, section 2, of the Constitution of this state, because important functions pertaining to the board of aldermen have, during the incumbency of the members elected to that body, been transferred by the mandate of the legislature to the board of estimate and apportionment dur-

ing the incumbency of the members theretofore elected thereto, which legislation practically amounts to an appointment by the legislature to a local office instead of an election to that office by the people, or an appointment thereto by the local authorities. (L. 1905, ch. 629–631; *People* v. *Raymond*, 37 N. Y. 428; *People ex rel. Bolton* v. *Albertson*, 55 N. Y. 50; *People ex rel. Williamson* v. *McKinney*, 52 N. Y. 374; *People ex rel. Fowler* v. *Bull*, 46 N. Y. 507; *People ex rel. Lord* v. *Crooks*, 53 N. Y. 648; *People ex rel. Leroy* v. *Foley*, 148 N. Y. 677; *Rathbone* v. *Wirth*, 150 N. Y. 459; *People ex rel. Lovett* v. *Randall*, 151 N. Y. 497; *People ex rel. Burby* v. *Howland*, 155 N. Y. 270; *People ex rel. Balcom* v. *Mosher*, 163 N. Y. 32; *Matter of Brenner*, 170 N. Y. 185.) The statutes are in conflict with article 3, section, 18 of the Constitution, in that they designate the board of estimate and apportionment the "local authorities" having the control of the streets and highways of the city whose consent alone is necessary for the construction and operation of a street railway thereon, whereas the "local authorities" in control of the streets in the city of New York whose consent is required by the Constitution is the board of aldermen, the legislative and governing body thereof. (Const. N. Y. art. 3, § 18; *Ghee* v. *N. U. G. Co.*, 158 N. Y. 510; *Kittinger* v. *B. T. Co.*, 160 N. Y. 377; *Adamson* v. *N. El. R. R. Co.*, 89 Hun, 261; *Bohmer* v. *Haffen*, 35 App. Div. 387; 161 N. Y. 390; *People ex rel. N. Y. & R. G. Co.* v. *Cromwell*, 89 App. Div. 291.) The statutes are in conflict with article 3, section 18, of the Constitution, for the reason that power is conferred upon a minority in number of the members of the board of estimate and apportionment to overrule the majority in number of the members thereof, and a board so constituted is not a "local authority" and its consent is not the consent required by the Constitution. (*Rathbone* v. *Wirth*, 150 N. Y. 459.) The statutes violate article 10, section 2, because the board of estimate and apportionment is not composed of persons wholly elected by the people or wholly appointed by some local authority, but, on the contrary, is composed of members partly

elected and partly appointed. (*People* v. *Dooley*, 171 N. Y. 74.)

John J. Delany, *Corporation Counsel* (*Theodore Connoly* and *William P. Burr* of counsel), for respondents. The public functions of municipal corporations are entirely under the control of the state legislature. (*People ex rel. City of Rochester* v. *Briggs*, 50 N. Y. 553 ; 1 Dillon on Mun. Corp. 107 ; *Newton* v. *Comrs.*, 100 U. S. 549 ; *Meriwether* v. *Garrett*, 102 U. S. 472 ; *People* v. *Morris*, 13 Wend. 325 ; *Atkin* v. *Kansas*, 191 U. S. 207 ; *Worcester* v. *S. Ry. Co.*, 196 U. S. 539 ; *People ex rel. Wood* v. *Draper*, 15 N. Y. 532 ; *People ex rel. Morrill* v. *Bd. Suprs.*, 112 N. Y. 585 ; *Demarest* v. *Mayor, etc.*, 74 N. Y. 166.) The legislature and not the municipal corporation has paramount authority over the streets. (2 Dillon on Mun. Corp. § 656 ; *Beekman* v. *T. A. R. R. Co.*, 153 N. Y. 144 ; *Davis* v. *Mayor*, 14 N. Y. 506 ; *People* v. *Kerr*, 27 N. Y. 188 ; *Milhau* v. *Sharp*, 27 N. Y. 611.) The home rule provisions of the Constitution, article 10, section 2, do not prohibit the legislature from transferring the power delegated to a municipal corporation from one local board or officer of that corporation to another. (*People ex rel. Bolton* v. *Albertson*, 55 N. Y. 56 ; *People ex rel. Met. St. Ry. Co.* v. *Tax Comrs.*, 174 N. Y. 417 ; *People ex rel. M. S. R. Co.* v. *Tax Comrs.*, 174 N. Y. 434 ; *People* v. *Acton*, 48 Barb. 524 ; *Matter of Allison* v. *Welde*, 172 N. Y. 421 ; *People ex rel. Taylor* v. *Dunlap*, 66 N. Y. 162 ; *Matter of Lester*, 21 Hun, 130 ; *Matter of Zborowski*, 68 N. Y. 88, 96 ; *Matter of Roberts*, 17 Hun, 559 ; 81 N. Y. 62.) Unless restrained by the Constitution the legislature may add to the duties of an existing local office. (*Pearce* v. *Stephens*, 18 App. Div. 101.) The local authorities " having the control " of the streets within article 3, section 18, of the Constitution are the authorities to whom such control is given by the legislature. (*Matter of Kings Co. El. R. R. Co.*, 41 Hun, 425 ; *Matter of Highway Comrs.*, 72 Hun, 575 ; *People ex rel. N. Y. & R. G. Co.* v. *Cromwell*, 89 App. Div. 291.) The

power of delegation does not render the board of estimate and apportionment an illegal body. (*People* v. *Dooley*, 171 N. Y. 74; *People ex rel. Devery* v. *Coler*, 173 N. Y. 103; *People ex rel. Simpson* v. *Wells*, 181 N. Y. 252.)

*Edward M. Shepard, Paul D. Cravath, William D. Guthrie* and *Chase Mellen* for Union Railway Company of New York et al., intervening. The legislature has power to regulate the duties of officers of municipal corporations. (*Koch* v. *Mayor, etc.,* 152 N. Y. 72; *Demarest* v. *Mayor, etc.,* 74 N. Y. 161; *People ex rel. M. S. Ry. Co.* v. *Tax Comrs.,* 174 N. Y. 417; *Worcester* v. *S. R. Co.,* 196 U. S. 539; *Atkin* v. *Kansas,* 191 U. S. 207; *Meriwether* v. *Garrett,* 102 U. S. 472; *Mount Pleasant* v. *Beckwith,* 100 U. S. 514; *People* v. *Cannon,* 139 N. Y. 32; *People ex rel. Henderson* v. *Bd. Suprs.,* 147 N. Y. 1; *Bohmer* v. *Haffen,* 161 N. Y. 390.) The board of estimate and apportionment is the existing local authority having control of the streets of the city of New York. (*Byrne* v. *Drain,* 127 Cal. 663; *City of St. Louis* v. *Howard,* 119 Mo. 41; *Laundry License Case,* 22 Fed. Rep. 701, 702; *R. & L. O. W. Co.* v. *City of Rochester,* 176 N. Y. 36; *Matter of T. F. S. R. R. Co.,* 102 N. Y. 343; *Matter of R. E. R. Co.,* 123 N. Y. 351; *Matter of K. C. E. Ry. Co.,* 41 Hun, 425; *Town of Lysander* v. *S. L. & B. Ry. Co.,* 31 Misc. Rep. 330.) The Constitution does not prohibit the legislature from vesting in the board of estimate and apportionment power either to control the streets, to grant franchises, or to exercise legislative functions. (*Stack* v. *City of Brooklyn,* 150 N. Y. 335; *Matter of M. H. Bank,* 153 N. Y. 199; *People ex rel. Joyce* v. *Brundage,* 78 N. Y. 403; *People ex rel. Einsfeld* v. *Murray,* 149 N. Y. 367; *Chittenden* v. *Wurster,* 152 N. Y. 345; *Sanders* v. *S. L. & N. O. A. Line,* 97 Mo. 26; *Hovey* v. *State ex rel. Riley,* 119 Ind. 386.) The exercise by a local authority of the power to consent to the construction or operation of street railroads is not a legislative function. (*Ghee* v. *N. U. Gas*

*Co.*, 158 N. Y. 510 ; *Beekman* v. *T. A. R. R. Co.*, 153 N. Y. 144 ; *Potter* v. *Collis*, 156 N. Y. 16 ; *R. & L. O. W. Co.* v. *City of Rochester*, 176 N. Y. 36 ; *People* v. *Sturtevant*, 9 N. Y. 263 ; *Milhau* v. *Sharp*, 27 N. Y. 611 ; *Matter of N. Y. El. R. R. Co.*, 70 N. Y. 327 ; *People ex rel. Murphy* v. *Kelly*, 76 N. Y. 475 ; *People* v. *U. & D. R. R. Co.*, 128 N. Y. 240 ; *Matter of T. F. St. Ry. Co.*, 102 N. Y. 343.) The acts of 1905 do not violate the home rule provision of the Constitution. (*People ex rel. M. S. Ry. Co.* v. *Tax Comrs.*, 174 N. Y. 417 ; *Davis* v. *Mayor, etc.*, 14 N. Y. 506 ; *People* v. *Kerr*, 27 N. Y. 188 ; *Milhau* v. *Sharp*, 27 N. Y. 611 ; *People* v. *O'Brien*, 111 N. Y. 1 ; *Potter* v. *Collis*, 156 N. Y. 16 ; *People ex rel.* `Wood` v. *Draper*, 15 N. Y. 532 ; *People* v. *Pinckney*, 32 N. Y. 377 ; *People ex rel. Kingsland* v. *Palmer*, 52 N. Y. 83 ; *N. Y. F. Department* v. *Atlas Steamship Co.*, 106 N. Y. 566.)

*George L. Rives* and *Albert B. Boardman* for Board of Rapid Transit Railroad Commissioners for the City of New York, intervening. The amendments to the Rapid Transit Act and the charter do not violate article 10, section 2, of the Constitution. (Cooley's Const. Lim. 388 ; *People* v. *Koch*, 152 N. Y. 72 ; *People* v. *Flagg*, 46 N. Y. 401 ; *Williams* v. *Eggleston*, 170 U. S. 304 ; *People* v. *Albertson*, 55 N. Y. 50 ; *Matter of T. F. St. R. R. Co.*, 102 N. Y. 343 ; *Gertum* v. *Bd. Suprs.*, 109 N. Y. 170 ; *People* v. *Keeler*, 29 Hun, 175 ; *People* v. *Howland*, 155 N. Y. 270 ; *Warner* v. *People*, 2 Den. 272 ; *Conners* v. *City of New York*, 5 Sandf. 355.) The amendment to the Rapid Transit Act does not violate article 3, section 18, of the Constitution. (*Matter of N. Y. D. Ry. Co.*, 107 N. Y. 42 ; *Matter of K. C. El. R. R. Co.*, 41 Hun, 425 ; *Town of Lysander* v. *S. L. & B. R. Co.*, 31 Misc. Rep. 330 ; *Bohmer* v. *Haffen*, 35 App. Div. 381.) There is nothing in the Constitution which precludes the legislature from conferring on the board of estimate and apportionment control of the streets of the city of New York. (*People* v. *Bd. Suprs.*, 170 N. Y. 105 ; *R. & L. O. W. Co.*

v. *City of Rochester*, 176 N. Y. 36; *Matter of Zborowski*, 68 N. Y. 88; *Atty.-Gen.* v. *Common Council*, 29 Mich. 108.) The fact that a minority in numbers of the board of estimate and apportionment may cast a majority of the votes does not affect the constitutionality of the acts now in question. (*Cohens* v. *Virginia*, 6 Wheat. 264.) The fact that the board of estimate and apportionment may be composed partly of elective and partly of appointive officers does not affect the constitutionality of the acts now in question. (*People* v. *Dooley*, 171 N. Y. 74.)

O'BRIEN, J.   This action was brought by a taxpayer of the city of New York against the mayor and the other officials of that city constituting the board of estimate and apportionment. The purpose of the action was to restrain the board from proceeding to exercise the various powers conferred by the statutes hereinafter referred to. The defendants demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained by the trial court, and the judgment was subsequently affirmed on appeal.

The plaintiff's case is based entirely upon allegations that the statutes conferring new powers upon the defendants as the board of estimate and apportionment are void as in conflict with the State Constitution. This general conclusion is based upon various grounds and reasons that need not be referred to with much detail, since the whole argument rests upon one or two propositions that are controlling. The enactments attacked by the complaint were passed, or at least became laws, on the 27th of May, 1905, and consist in form of three separate statutes. Two of them are amendments to the charter with respect to the powers and duties of the board of estimate and apportionment and the board of aldermen. (L. 1905, ch. 629; L. 1905, ch. 630.) The other is an act which purports to amend chapter 4 of the Laws of 1901, known as the Rapid Transit Act. (L. 1905, ch. 631.) The general scope of the complaint is to the effect that the legislature had

no power to pass these laws, since it was an attempt to abolish or greatly restrict the powers and duties of the board of aldermen as the legislative. and governing body of the city, and transfer these powers and duties to another board, namely, the board of estimate and apportionment.

It is argued that prior to the passage of these acts the power to grant franchises rested with the board of aldermen, while by the legislation in question the power of the aldermen over this subject was abolished and transferred to the board of estimate and apportionment. This changing of the statute in various ways constitutes the substantial element in the complaint, and it is necessary only to deal with that feature of the controversy.

All franchises or privileges known by that term proceed from the state in the exercise of its sovereign powers. Through different mediums or agencies the state may act in granting franchises, but it is itself the source and depositary from which the right proceeds. Sometimes the franchise is conferred directly by the state through some grant or legislative enactment, but more generally the sovereign delegates its power to municipal or local authorities. It is in the manner of delegating the power to certain officers of the city of New York that it is claimed that the constitutional power of the legislature has been transcended in this case. There can be no doubt that the legislature had the power to repeal the charter in so far as it conferred power upon the board of aldermen to grant franchises. The authority that conferred the power could. abolish it or take it away. It makes no difference that this power was exercised by the legislature before the official terms for which the aldermen were elected had expired, since that body had no vested right to the continuance of any of the public powers or duties conferred upon them by the charter. Having abolished or greatly limited the powers of the aldermen with respect to the granting of franchises, the legislature was not compelled to leave this power in abeyance, but might confer it upon any other local authority authorized by the Constitution. There is no consti-

tutional restriction upon the power of the legislature to delegate to local authorities the power to grant franchises for the use of the public streets or otherwise, except in one class of cases. The legislature is forbidden by the Constitution to pass any local bill granting to any corporation, association or individual the right to lay down railroad tracks; and, further, that no law shall authorize the construction or operation of a street railroad except upon condition that the owners of one-half in value of the property bounded on, and the consent, also, of the local authorities having control of, that portion of the street or highway upon which it is proposed to construct or operate such railway shall be first obtained. (Constitution, art. 3, § 18.) Therefore, the legislature has no power, direct or indirect, to grant a franchise for the purpose of laying down railroad tracks in the street, except upon the conditions specified in this provision of the Constitution, and one of these conditions is that the consent of the local authorities having control of the street shall be obtained. As to all other franchises, the legislature is not restricted in conferring power upon the local authorities.

It is contended by the learned counsel for the plaintiff that at the time of the passage of the acts in question the board of aldermen constituted the sole authority having control of the streets within the meaning of this provision of the Constitution. If this were so we cannot see how it would restrict the legislature from abolishing that power and transferring it to some other board or department of the city government. But it seems to us that the contention cannot be sustained as a matter of fact. When the various charters and statutes relating to the control of the streets of the city are examined it will be found that for certain purposes the board of aldermen possess certain powers. The board of estimate and apportionment possess the power to open and close streets and alter the city map, and the street commissioner or commissioner of public works possessed certain other powers in that respect. It was, therefore, competent for the legislature, by the acts in question, to specify the particular body or

board that should be deemed to have control of the streets within the meaning of the Constitution, and in this case it has designated for that purpose the board of estimate and apportionment. There is nothing in the Constitution to prevent the legislature from making such a designation, or from changing it from time to time as the public interest may require, and that is substantially what the legislation in question seeks to accomplish. The burden is upon the plaintiff to point out the particular provision of the Constitution claimed to have been violated in the passage of these laws. The amendments were an exercise by the legislature of its undoubted power with respect to the government of cities, and every presumption should be indulged in favor of the validity of its action. If, in the judgment of the legislature, the board of estimate and apportionment was the proper body to intrust with the granting of franchises, we are unable to see wherein any right of the board of aldermen or of any other officer or individual has been unduly invaded.

The argument in support of this appeal has taken a wide range and much has been said with reference to the manner in which the board of estimate and apportionment is constituted and the methods by which consent is given to the granting of franchises. It is contended, in substance, that the legislature had no power to give control of the streets to such a body since by its constitution a mere minority of the individuals composing it may determine the question before it. In this view of the case it may be well to restate the functions of that board and the purpose for which they were conferred by the charter. The amendments in question did not create the board of estimate and apportionment, nor regulate the manner in which its assent shall be expressed as to questions that come before it. All these things are to be found, not in the amendments, but in the charter as it previously existed and are really not attacked by the complaint at all. The charter of the city of New York, as we all know, was the result of the labor of a commission composed of its most eminent citizens. It numbered amongst its members pro-

fessional men of the highest character, business men and persons who had long been familiar with the city government. That commission reported to the legislature, and it may be useful here to recall what was said in that report with reference to the board of estimate and apportionment, and the manner in which its decisions were to be made. We quote from the report, which the legislature incorporated into the new charter:

"The Commission has recommended a considerable extension of the powers now conferred upon the Board of Estimate and Apportionment. With respect to what may be called the routine expenditures of the City, whether they are provided for by taxation or by use of the City's credit, the Board of Estimate and Apportionment is given large powers. By reason of the possession of these new powers and of the increase of its freedom in exercising the powers which it has from the beginning of its history possessed, the Board of Estimate and Apportionment under our draft charter will be the most important body in the City government. Whatever dissatisfaction may have been felt with any other municipal body the Board of Estimate and Apportionment has generally given satisfaction for its capacity, efficiency and integrity. Under the plan of the Commission it will be in reality the centre of all legislative activity in relation to financial affairs and of much of the administrative activity of the City. It will be in effect an Upper House of the City Legislature and also a cabinet of the most important administrative officers. In dealing with the composition of the Board of Estimate and Apportionment the Commission has not been unmindful of the danger of changing an agency of government which has long and successfully stood the test of experience. The present Board consists of the Mayor, the Comptroller, the President of the Council, the President of the Department of Taxes and Assessments and the Corporation Counsel — the two last-named officials being appointees of the Mayor. In giving to the Mayor the absolute power of removal it is evident that his appointees would be to a greater extent than

at present under his influence, so that the Mayor in the Board of Estimate and Apportionment might, in effect, have three votes out of the five. It is not considered advisable to make the Corporation Counsel and the President of the Department of Taxes and Assessments elective officers; neither was it considered desirable to elect additional members to the Board at large. A Board consisting of three members would be manifestly too small. On the other hand the facts that the Board of Estimate and Apportionment was given the power to disapprove the decision of Local Improvement Boards and to determine the amount of money to be expended out of the treasury of the City in public works in each borough made it proper that the boroughs should have a direct representation on the Board. The Commission has, therefore, recommended that the Board of Estimate and Apportionment shall be composed purely of elective officers, viz.: The Mayor, the Comptroller and the President of the Board of Aldermen, elected by the City at large, and of the Presidents of the five Boroughs, elected by the citizens of their localities. But in adding the Borough Presidents to the Board of Estimate and Apportionment another question required consideration. If the Borough Presidents were to possess a voting power, not only equal to that of each other but also to that of the other members of the Board, they might together control its decisions, and this would mean that the financial control of the City would pass from the officials who are not directly interested in spending the City's money to officers at the head of great administrative agencies and charged with the duty of spending large sums in the development and improvement of the particular localities they are elected to represent. It, therefore, seemed essential that the total voting power of the five Borough Presidents should be less than that of the officers elected from the City at large, and it was not thought just to give to the representatives of the smaller Boroughs an equal vote with the Presidents of the two great Boroughs of Manhattan and Brooklyn. What should be the representation of the different elements in the Board of Esti-

mate and Apportionment has been one of the most difficult questions which the Commission has had to answer.  We propose to give three votes to each of the officers elected at large, two votes each to the Presidents of the Boroughs of Manhattan and Brooklyn, and one vote each to the Presidents of The Bronx, Queens and Richmond.  It will be perceived that the total number of votes in the board will be sixteen, and that nine of these votes will be cast by the officers elected at large, assuring to them a control of the Board." (Assembly Documents No. 40.)

In organizing the government of the city of New York as it now exists the legislature had the power to provide for cumulative voting in the board of estimate and apportionment.  The charter unites not only two great cities, but counties, towns and villages under one general system of municipal government.  Some of the municipalities thus united were large, populous and wealthy.  Again, many of them were mere rural towns, and two whole counties and the larger part of a third county were embraced in the consolidation.  In the decision of questions involving vast interests that devolved upon the board it would be obviously unjust and unfair to permit each member to vote *per capita,* and accordingly it was enacted that they should have votes in proportion to the interests they represented.  There is nothing new in such a principle when applied to a system of popular government where localities and not individuals are a controlling element. The duty of electing the president of the United States may in certain cases devolve upon the house of representatives, and then it is provided that the individual member is eliminated and the vote taken by states, each state, whether great or small, having but one vote.  There is nothing in the Constitution of this state to prevent the legislature from providing for cumulative voting in such boards.  It is a question of policy, not power.

There is nothing in the case of *Rathbone* v. *Wirth* (150 N. Y. 459) that has any bearing on the questions in this case. The statute in that case provided for the election by the com-

mon council of the city of Albany of a police board consisting of four persons. The board were local city officers required by the Constitution to be elected by the people or appointed by such local authorities as the legislature should direct. The local authority selected by the legislature and named in the statute to make the appointment was the common council, and so far the form of the Constitution was complied with. But in substance it was violated, since the statute was so drawn as to enable a political minority of the whole body to elect a police board. There was no provision in the statute for cumulative voting in the common council, and the question discussed in the case at bar was not involved at all. But there was a provision in the statute " that no person is eligible to the office of police commissioner unless at the time of his election he is a member of the political party or organization having the highest or next highest representation in the common council." What this court held was that a minority of the common council was not the local authority contemplated by the Constitution and the statute to make the appointment. In other words, it was not the common council, and that the legislature had no power to so frame a statute on political lines as to produce such a result, since while it professed to obey the Constitution, it was an evasion of its letter and spirit.

If in that case the charter of the city of Albany or any existing law provided, for instance, that the mayor should on such questions be authorized to cast two votes instead of one, then a question somewhat similar to that in the case at bar might possibly arise, but there was nothing of that kind in the statute or in any law, and the members of the common council were authorized to vote only *per capita.* It is a very common provision in city charters that the mayor, although a member of the common council, shall not be entitled to vote on any question before the body unless there is a tie. The same power that could deprive him of a vote as a member of the common council could also authorize him to cast one vote or two, as the legislature might deem just and proper. It is

one thing to make decisions in a municipal board by cumulative voting. It is quite another thing to so manipulate a statute that a minority may overrule the will of the majority, and elect officers that the common council only had the power to elect.

In the case at bar the so-called home rule provision of the Constitution has no application. The statutes in question did not assume to appoint any one to a local or other office. At most, the statutes simply imposed some new and additional duties upon the board of estimate and apportionment which had theretofore been performed by the aldermen. There is nothing in the Constitution that forbids such legislation.

The judgment should be affirmed, with costs.

CULLEN, Ch. J., HAIGHT, VANN, WERNER, WILLARD BARTLETT and HISCOCK, JJ., concur.

Judgment affirmed.