In the Matter of the Application of RICHMOND RAILWAYS, INC., Petitioner, for a Certiorari Order against JOHN F. GILCHRIST and Others, Constituting the Transit Commission of the State of New York, in and for the City of New York, Defendants.

THE STATEN ISLAND CHAMBER OF COMMERCE and Others, Intervenors.

First Department, March 1, 1929.

*William M. Wherry* of counsel [*Thomas H. Wight* with him on the brief; *Wherry & Wight*, attorneys], for the petitioner.

*George H. Stover* of counsel [*Louis Cohen* with him on the brief; *George H. Stover*, attorney], for the Transit Commission, respondent.

*L. W. Widdecombe* for the intervenor, The Staten Island Chamber of Commerce.

*Bruce Bromley* of counsel [*Jesse C. Millard* with him on the brief; *Cravath, deGersdorff, Swaine & Wood*, attorneys], for the intervenors The Staten Island Rapid Transit Railway Company and The Staten Island Railway Company.

*Charles F. Bailey* of counsel [*Walter Gordon Merritt* and *James B. McDonough, Jr.*, with him on the brief; *Gleason, McLanahan, Merritt & Ingraham*, attorneys], for the intervenor Tompkins Bus Corporation.

*Joseph A. Devery* of counsel [*George P. Nicholson, Corporation Counsel*], for the City of New York, *amicus curiæ*.

O'MALLEY, J. The order of certiorari brings before us for review the propriety of the determination of the Transit Commission of the State of New York (hereinafter called the Commission) in granting a certificate of public convenience and necessity to the Tompkins Bus Corporation (hereinafter called the Bus Corporation), to operate twelve bus routes on Staten Island, which is wholly included in the borough of Richmond. The order was granted on the application of the petitioner, Richmond Railways, Inc., a corporation engaged in the operation of surface street railways on Staten Island. In addition to the Bus Corporation, there are other intervenors, namely, the Staten Island Rapid Transit Railway, the Staten Island Railway Company, and the Staten Island Chamber of Commerce, all of which join with the petitioner in seeking to have the order sustained and the determination of the Commission annulled.

The determination is attacked upon three general grounds: (1) That the Commission was without jurisdiction for the reason that the Bus Corporation had not been given a valid franchise from the city of New York; (2) that the operation of the bus routes embraced within the certificate will result in direct and ruinous competition with the street railways of the petitioner which are already rendering adequate service; and (3) that the Bus Corporation failed to furnish satisfactory proof of its financial ability. The facts essential to the consideration of each of the objections raised will be considered in order.

A franchise for eighteen bus routes was granted by resolution of the board of estimate and apportionment on July 28, 1927. It was approved by the mayor on August 2, 1927, and a contract between the city of New York and the Bus Corporation for operation of the routes was signed on August 4, 1927. On August 31, 1927, the Bus Corporation applied to the Commission for a certificate of public convenience and necessity. Hearings at which the petitioner and all others interested were heard, began October 5, 1927, and continued until March 6, 1928, at which time the application of the Bus Corporation was denied, upon the ground that the Bus Corporation had failed to present satisfactory proof that it was possessed of sufficient funds to finance the operation and thus give assurance that it would furnish service commensurate with public need. On the application of the Bus Corporation, however, the hearings were reopened for the purpose of permitting it to present further evidence of its financial ability. Such evidence was of a character sufficient to satisfy the Commission and resulted in an order of May 16, 1928, which granted the application for the certificate.

At the commencement of the hearings, the petitioner herein,

the Richmond Railways, Inc., and other objectants, contended that the franchise under which the Bus Corporation was seeking its certificate was invalid for the reason that the resolution of the board of estimate and apportionment of July 28, 1927, was voted and passed without the requisite number of valid votes as required by the Greater New York Charter (hereinafter designated charter).

Concededly the resolution was passed in the absence from the meeting of the comptroller and the borough presidents of Manhattan, Bronx and Queens boroughs, such officials having been represented by a deputy comptroller and the commissioner of public works of each borough, respectively. It is contended, therefore, that only nine of the sixteen votes of the board were legally cast, and that the resolution lacked three votes of the necessary three-fourths votes of the board to constitute legal action. It becomes necessary to consider the various provisions of law applicable to the question involved.

By section 66 of the Transportation Corporations Law (as amd. by Laws of 1926, chap. 762) the consent of the city authorities to the operation of these routes was a prerequisite to the issuance of a certificate of public convenience and necessity. By the provisions of section 74 of the charter (Laws of 1901, chap. 466, as added by Laws of 1914, chap. 467), such consent requires the concurrence of members of the board of estimate and apportionment entitled as provided by law to three-fourths of the total number of votes to which all of the members of such board are entitled. By section 226 of the charter (as amd. by Laws of 1917, chap. 258), the total number of votes to which all the members of such board are entitled is sixteen, nine of which constitute a quorum. It was, therefore, necessary when the city consented to the operation of these routes and granted a franchise therefor, that there should have been cast twelve valid votes in the meeting of the board.

As already appears, the mayor, the president of the board of aldermen and the borough presidents of Richmond and Brooklyn personally took part in the meeting and voted. This gave a total of nine votes. It is conceded upon the record that the presidents of the boroughs of Manhattan and The Bronx were *absent* from the city on the day such meeting took place. We are of opinion that in such circumstances the votes cast in behalf of such borough presidents by the commissioners of public works for said boroughs were validly cast. As their combined votes totaled three, there were cast, at least, twelve votes in favor of the resolution, thus satisfying the requirements of section 74 of the charter.

Under the original charter of 1897, the presidents of the respective boroughs were not members of the board of estimate and appor-

tionment, though they were elective officers of the municipality. (Laws of 1897, chap. 378, §§ 226, 382.) Section 382 of the original charter provided that in the case of the disability of any of the borough presidents by reason of protracted illness, there should be elected a president *pro tempore* who was to act until such disability was removed. By the amended charter of 1901, however, that particular portion of section 382 was repealed. (See, also, Laws of 1923, chap. 780, amdg. charter of 1901, § 382.) By section 226 of the new charter, the presidents of the various boroughs were made members of the board of estimate and apportionment. Section 383 of the old charter was subjected to various amendments. Such amendments provide that each borough president may appoint and at pleasure remove a commissioner of public works " who may discharge all the *administrative* powers " relating to streets, sewers, public buildings and supplies; " and who shall, in the *absence*, or illness of such president discharge *all* the duties of such president." (Italics ours.) The apposition of the duties of the commissioner, classified as " all the administrative powers " and " all the duties " of the borough president, is highly significant. (See, also, Laws of 1921, chap. 170, amdg. said § 383.)

Concededly the action of the board of estimate and apportionment constituted a legislative and not an administrative act. We agree with the petitioner that such legislative powers may not be delegated by the officers to whom they are originally granted. There was, however, no delegation of their powers by the presidents of these boroughs to the commissioners of public works of such boroughs. The presidents being absent, the commissioners of public works in such boroughs were constituted members of the board of estimate and apportionment, not by their superiors, the presidents of such boroughs, but by express authority of the Legislature under the provisions of section 383 of the charter. Under this section the commissioner of public works acts for his superior " by the force of the statute." (*Culp* v. *City of New York*, 146 App. Div. 326.) The power is not delegated by an elective officer.

There is no doubt that the power — the Legislature — which delegated authority to the borough presidents could also take it away. (*Wilcox* v. *McClellan*, 185 N. Y. 9; 3 Dillon Mun. Corp. [5th ed.] § 1227, pp. 1945 *et seq.*) Having the power to take away such authority, it certainly had the power to designate some other person as a depositary thereof under certain contingencies. The charter, like any other statute, must be read as a whole and in such a way, if possible, to make it consistent and harmonious. It is true that where elective officers have powers which may not be delegated, the people are entitled, not only as a matter of law, but as a matter

of good faith and public policy, to have such officers act in person and not through agents. It is equally, if not more important, however, that the business, legislative included, of a large municipality shall proceed and not be obstructed by the illness or the temporary absence, willful, perchance, of some of its officers. To meet this contingency the Legislature itself has provided that the respective commissioners of public works shall be members of the board of estimate and apportionment in case of the illness or absence of their respective borough presidents.

The people, when electing a borough president, are charged with knowledge that the person chosen will have the discretion to appoint a · commissioner of public works, who, under the contingencies enumerated in the charter, may be called upon to exercise the functions of the borough president, a situation not unlike that presented under the Federal Constitution (Art. 2, § 1, subd. 5) and the Presidential Succession Act (24 U. S. Stat. at Large, 1, chap. 4; U. S. Code, tit. 3, § 21), where, in certain contingencies, a Cabinet officer may, in the case of the incapacitating illness or death of the President and Vice-President, exercise all the prerogatives of the chief executive.

It is urged that to permit action to be taken by a board constituted of officials, partly elective and partly appointive, would be violative of article 10, section 2, of the Constitution of the State of New York, commonly known as the home rule section. It may be noted that this precise point here raised by the petitioner was before the Court of Appeals in *Wilcox* v. *McClellan* (*supra*). In that case the power of the Legislature to transfer from the board of aldermen to the board of estimate and apportionment the power to grant franchises was challenged, but sustained. One ground urged· was that the act of the Legislature was violative of article 10, section 2, of the Constitution, because the board of estimate and apportionment was not composed of persons wholly elected by the people or wholly appointed by some local authority, but on the other hand was composed of members partly elected and partly appointed. Those appointed, it was urged, consisted of the commissioners of public works and deputy comptrollers, who are appointed pursuant to the provisions of sections 150 and 383 of the charter. (See, also, Laws of 1914, chap. 8, and Laws of 1921, chap. 170, respectively amdg. said sections.)

This particular argument was given little weight by the Court of Appeals, which in concluding its opinion, merely stated that this particular provision of the Constitution had no application, inasmuch as the statutes under consideration did not assume to appoint any one to a local or other office, but at most simply imposed some

new and additional duties upon the board of estimate and apportionment, which had theretofore been performed by the aldermen, against which transfer of duties there was nothing in the Constitution. (*Wilcox* v. *McClellan, supra*, 23.)

In this view of the case it becomes unnecessary to pass upon the validity of the votes cast by the deputy comptroller and the commissioner of public works of the borough of Queens. With respect to the latter, however, it is to be borne in mind that a public official is presumed to act legally; and even without evidence to show the absence or illness of the borough president, such presumption would lend *prima facie* validity to the vote cast by the commissioner of public works of such borough.

The second objection relates, as already appears, to the question of alleged injurious or wasteful competition with the railways of the petitioner. It is to be noted that the certificate of public convenience and necessity was granted with respect to only twelve of the eighteen routes covered by the franchise. Of the routes for which a certificate was granted a majority are clearly not in competition with the existing lines.

Generally speaking, the plan of operation of all of the proposed routes furnishes service to the interior of Staten Island and to points not reached by the existing transit facilities. It is practically conceded that as to seven of the twelve routes for which a certificate was granted, there is no basis for a claim of injurious competition. The petitioner's brief in this respect is confined wholly to routes designated by numbers 4, 5, 6, 7 and 10. With respect to these it is contended that there is unreasonable competition and that the public convenience and necessity therefor would not be served but would be subverted by additional lines. In this connection, of course, it is contended that the service already rendered is inadequate.

That the bus routes in question are brought into competition in some degree with the petitioner's lines, cannot be doubted and this fact was clearly recognized by the commissioner before whom the hearings were held. However, it is to be noted that all bus routes and transit lines start from a central terminal, namely, St. George, where New York communications by ferry are available. This physical situation renders it necessary that all lines originate and terminate at this point and as a natural consequence some competition within a limited area must, of necessity, result.

On the record before us we cannot say as a matter of law that the competition will be injurious or wasteful, or that public convenience and necessity will not be best served by the additional transportation facilities under all circumstances. The question was primarily one for the Transit Commission and this court should be

loath to exercise its discretion with respect to the granting of a rehearing merely because upon the facts presented in the record it might have reached a different conclusion. On the members of the Commission has been placed the responsibility as public officers and they should be upheld in the fair exercise of such responsibility. The court is without power to totally and finally annul the determination of the Transit Commission and pass generally upon its wisdom and expediency unless the evidence shows that there has been an unlawful and arbitrary exercise of power. (*People ex rel. N. Y. & Queens Gas Co.* v. *McCall*, 219 N. Y. 84; affd., 245 U. S. 345.) It cannot be said that the Commission has violated any of the principles laid down in the authority cited.

Nor, for like reasons, are we inclined to interfere with the finding of the Commission on the question of the Bus Corporation's financial ability, as disclosed by the evidence on the rehearing. This showed it had assurance of additional capital to the extent of $100,000 in cash. Whether under all the circumstances this increase in resources was sufficient to warrant the conclusion that it was reasonably certain the Bus Corporation could give service commensurate with the public needs, was peculiarly for the determination of the Commission. In reaching its conclusion that body no doubt took into consideration that the Bus Corporation had for some three years been operating over some of the routes in question and that by reason of such previous service had gained an experience that would prove of value in its future operations. Having reached the conclusion that additional transit facilities consisting of bus service was necessary and requisite for public convenience, the Commission might well have considered it more advisable to permit an established and going concern with synchronized operation, to continue, than to intrust the undertaking to untried and inexperienced concerns, even assuming that such were available. In addition to this evidence of increased capital, a bond in the sum of $50,000 to indemnify against tort actions was made a condition precedent to the certificate being granted.

We have considered all other objections raised upon the briefs of the petitioner and on those of the intervenors and find none possessing sufficient merit to require further discussion.

It follows that the order should be dismissed and the determination of the Commission confirmed, with fifty dollars costs and disbursements to the respondents.

Dowling, P. J., Finch, McAvoy and Martin, JJ., concur.

Order of certiorari dismissed and determination confirmed, with fifty dollars costs and disbursements to the respondents.