EDMOND J. DIXON, Petitioner, *v.* FIORELLO H. LAGUARDIA, as Mayor of the City of New York, and Others, Defendants. MUNICIPAL COURT CLERKS ASSOCIATION OF THE CITY OF NEW YORK, Intervenor.*

Supreme Court, Special Term, New York County, February, 1, 1938.

* Affd., 253 App. Div. 881.

*Talley & Lamb* [*Alfred J. Tally* of counsel], for the petitioner.

*William C. Chanler, Corporation Counsel,* for the defendants.

*Gabriel L. Kaplan* and *Sidney A. Fine,* for the intervenor.

McGEEHAN, J.   The petitioner is an employee of the city of New York.   He alleges that on October 29, 1937, the board of estimate and apportionment adopted a budget for the city of New York for the year 1938, which was thereafter approved without change by the board of aldermen, and which fixed his salary for that year in the sum of $4,000.   He demands that the payrolls be accordingly certified in that amount.   He is met with the objection that the budget to which he refers is no budget at all, since it had never been legally adopted, and that the legal budget of the city of New York for the year 1938 is a budget which, on January 11, 1938, was adopted by the council of the city of New York, in which budget the annual salary for the petitioner's position is fixed at $3,000.

The New York City Charter (§§ 111–126, 952) indicates that the first budget which the new council is authorized to adopt is the budget for the year 1939. However, if on January 11, 1938, there was in existence a legal budget of the city of New York for the year 1938, there was no authority in the council of the city of New York to adopt any other budget, even if it otherwise would have had such power.

Under the Greater New York Charter (Laws of 1901, chap. 466, § 226), as amended by Local Law No. 11 of 1933 (p. 105), the power to make a budget was vested in the board of estimate and apportionment and the board of aldermen. In section 226-c, added by Local Laws of 1933 (p. 106), is specifically detailed the various steps necessary to be undertaken in the making of that budget. Briefly, these steps were:

(1) The preparation of an executive budget, giving the sources and estimated revenues of the city and county governments and the amounts required for the administration, maintenance and operation of the said governments. It was the duty of the director of the budget to prepare this executive budget with the co-operation of the various heads of departments, the comptroller, and the president of the board of taxes and assessments. (2) On or before the second day of October, the mayor was required to submit such executive budget to the board of estimate and apportionment, and the board was required to meet in executive session and consider such budget. Such budget, together with a message from the mayor of comment and explanation, was required to be published on or before October fifth in printed form so as to be available for public discussion. (3) The board of estimate and apportionment was required to make a budget on or before November first. The chronological sequence of the steps antecedent to the making of such a budget was specifically detailed in the charter, as follows: The board of estimate and apportionment was required to prepare for public discussion on or before October tenth a tentative budget. Any differences between the tentative budget and the executive budget were to be printed as an annex to the tentative budget. (4) The board was required to hold public hearings on such tentative budget. (5) After the hearings on the tentative budget had been completed, the budget ripened into a proposed budget, which the board was required to file with its secretary on or before October twentieth. (6) Thereafter, the board was empowered to decrease or eliminate any item in the proposed budget and was required to hold public hearings on changes. This step was required to be completed by October thirty-first. (7) The board was required no later than October thirty-first, to finally adopt the budget.

(8) The budget thus having been made by the board of estimate and apportionment, was required to be submitted within five days to the board of aldermen. (9) The mayor was then required to call a special meeting of the board of aldermen to consider such budget. (10) The board of aldermen was required to continue the consideration of such budget from day to day, but no longer than twenty days, until it finally acted thereon. Failure of the board of aldermen to act upon the budget within that time was deemed to be a final adoption of the budget as submitted by the board of estimate and apportionment. The board of aldermen was empowered to reduce, but not to increase, the items in the budget, nor could it vary the terms and conditions of, or insert any new items in the budget. (11) In the event that the board of aldermen reduced any item as fixed by the board of estimate and apportionment, such action of the board of aldermen was subject to the veto power of the mayor. (12) Such a veto might be overridden by three-fourths vote of the board of aldermen, and, if not so overriden, the items as fixed by the board of estimate and apportionment stood as part of the budget. (13) On or before December twenty-fifth the budget, as thus finally adopted, was required to be certified by the mayor, comptroller and city clerk. (14) On or before December thirty-first the budget was required to be filed in the office of the comptroller and published in the *City Record*.

The journal of the proceedings of the board of estimate and apportionment, in so far as the same concerns itself with the making of the budget of 1938, as adopted by it on October 29, 1937, was submitted in evidence upon the hearing of this motion. In that journal is revealed the following:

On October 2, 1937, the mayor presented to a special meeting of the board of estimate the executive budget, together with his message of comment and explanation. He then *moved* that the executive budget, as presented, be received by the board and referred to executive session. The *motion* gained eleven affirmative votes, no one voting in opposition thereto. Following the above resolution, another resolution was offered by the mayor that " pursuant to the provisions of the Greater New York Charter, as amended by Local Law No. 11 for the year 1933, and section 952 of the New York City Charter," public hearings for taxpayers in regard to the budgets for the years 1938 and the first six months of 1939, as tentatively prepared, be fixed for October 13, 1937, and October 14, 1937, and that public hearings on said budgets, as proposed for adoption, be fixed for October 25, 1937, and October 26, 1937, and that the secretary of the board be directed to have published in the *City Record* a notice of said hearings and an

invitation to the taxpayers of the city to appear and be heard. This resolution was likewise adopted by eleven votes.

On October 6, 1937, at a special meeting of the board of estimate and following a statement by the comptroller which recommended that the comptroller's estimate of the general fund revenues for 1938, as submitted by him, should stand despite criticism of that estimate by the mayor in his message of October second, the mayor offered a resolution to adopt as the tentative budgets for the year 1938 and the first six months of 1939, the executive budgets submitted by the mayor, and further that the director of the budget be directed to correct such clerical and typographical errors as might be found in said tentative budgets. This resolution was adopted by sixteen votes, the whole number of votes authorized to be cast by said board. On that day the board adjourned to October 13, 1937, " for the purpose of hearing taxpayers on the Budgets for the year 1938 and for the six months of 1939, as tentatively prepared."

On October thirteenth, the first item on the calendar was the taxpayers' hearings on the tentative budget. The journal of proceedings refers to the hearings of October second, October sixth, and the resolutions adopted on such previous dates. At the end of that day the board adjourned " to meet Thursday, October 14, 1937, at two-thirty P. M. for the purpose of continuing the hearing of taxpayers on the budgets for the year 1938, and for the first six months of year 1939 as tentatively prepared."

On October 14, 1937, the journal shows that, " The Board met in pursuance of an adjournment." The first item on the calendar was the continued taxpayers' hearings on the tentative budget. The journal recites the previous meetings of October second, October sixth and October thirteenth, and the resolutions and actions on such previous dates taken with regard to the budgets. At the end of the hearings, the mayor " declared " the hearings on the tentative budgets for the year 1938 and for the first six months of the year 1939 closed. At the end of that day the board, on motion, adjourned to meet October 20, 1937, " for the purpose of receiving the Budgets for the year 1938 and for first six months of year 1939, as proposed for adoption."

On October twentieth, the journal shows that, " The Board met in pursuance of an adjournment." The journal recites the previous meetings of October second, October sixth, October thirteenth and October fourteenth, and the resolutions and actions on such previous dates taken with regard to the budgets. There was then offered by the deputy and acting comptroller a resolution that, " pursuant to the provisions of section 226 of the Greater New York Charter,

as amended by Local Law, No. 11 of the year 1933, and section 952 of the New York City Charter, that the Tentative Budget, as adopted on October 6, 1937 (Cal. No. 1), which has since been considered in executive session by the members of the Board of Estimate and Apportionment, be and the same hereby is *amended* in accordance with the attached schedule of changes." An inspection of the minutes of the executive sessions reveals that the subject-matters of this amendment were each considered at one of the said sessions held on October eighteenth, nineteenth and twentieth, and in each instance were adopted by at least a majority vote of the board. As a typical instance, amendment of the item of salary for petitioner's position, being item 70 on the executive session calendar for October nineteenth, was approved by vote of eleven to none. At the meeting of October twentieth, this item was included in the schedule of changes. This resolution amending the tentative budget was adopted by an affirmative vote of ten to six. The chair (the mayor presiding) ruled the resolution adopted. A resolution was then offered by the deputy and acting comptroller that " pursuant to the provisions of section 226 of the Greater New York Charter, as amended by Local Law No. 11 of the year 1933, and section 952 of the New York City Charter, that the Tentative Budgets, as amended, are hereby adopted as the Proposed Budgets for 1938 and the first six months of 1939," and that such proposed budgets be filed with the secretary of the board and that the director of the budget be authorized to correct such clerical and typographical errors as might be found in said proposed budgets. This resolution was adopted by a vote of ten to six. The chair (the mayor presiding) ruled the resolution adopted. A resolution was then offered by the mayor that the director of the budget be directed to prepare the budgets for the year 1938 and the first six months of 1939 for adoption by the board of estimate and apportionment and for submission to the board of aldermen, and that the said director be authorized, in connection with such preparation, to correct clerical and typographical errors and to rearrange schedules and renumber codes as he might deem necessary and desirable. This resolution was adopted by sixteen votes, the whole number of votes authorized to be cast by such board. At the end of the day the board adjourned to meet October 25, 1937, for the purpose of holding a public hearing for taxpayers on the budgets for the year 1938 and for the first six months of the year 1939 as proposed for adoption.

On October 25, 1937, the journal shows that " The Board met in pursuance of an adjournment." The journal recites the previous meetings of October second, October sixth, October thirteenth,

October fourteenth and October twentieth, and the resolutions and actions on such previous dates taken with regard to the budgets. Following the public hearings and the transaction of other business, the board adjourned to meet on October twenty-sixth " for the purpose of holding a continued public hearing of taxpayers on the Budgets for the year 1938 and for six months of year 1939 as proposed for adoption."

On October 26, 1937, the journal shows that " The Board met in pursuance of an adjournment." The journal recites the previous meetings of October second, October sixth, October thirteenth, October fourteenth, October twentieth and October twenty-fifth, and the resolutions and actions on such previous dates taken with regard to the budgets. Following the aforementioned hearing, the following journal entry appears: " No one else appeared in relation to the Budgets for the year 1938 and for the first six months of 1939, as proposed for adoption. The hearings were closed." At the end of this meeting the board adjourned, on motion, to meet subject to the call of the chair *for the purpose of receiving the budgets for 1938 and for the first six months of 1939 as finally proposed for adoption.*

On October 29, 1937, the board met at special meeting pursuant to the call of the mayor. The mayor *moved* that all increases and appropriations added to the executive budget and included in the proposed budget be stricken out. The motion lost by a vote of ten to six. The mayor then moved to make certain additions to the terms and conditions of the budget with respect to per diem laborers. This motion was carried by sixteen votes. The mayor then *moved* the adoption of the budget for the year 1938 and also the terms and conditions with the resolution therein contained that " the Budget of the City of New York for the year 1938, as hereby made, pursuant to the provisions of the New York City Charter, adopted at the general election held on November 3rd, 1936, shall be administered under the following terms and conditions, to be changed only by resolution of the Board of Estimate, and be it further resolved, that the secretary be and hereby is directed to transmit to the head of each department, board, office and bureau of the city and county governments, certified copies of the Terms and Conditions governing the Budget for the year 1938 as herein set forth." This motion was adopted by a vote of ten to six. The chair (the mayor presiding) ruled the " resolution " adopted. The mayor then offered a resolution establishing positions and for fixation of salaries. This resolution was carried ten to six. The chair (the mayor presiding) ruled the resolution adopted. The mayor then offered with respect to the budget for the first six months of the

year 1939, a motion and a resolution similar to the above-cited motion and resolution with respect to the budget for the year 1938. In each instance the motion and resolution were carried by vote of ten to six. In each instance the chair (the mayor presiding) ruled the " resolution " adopted. The mayor then offered a resolution that " pursuant to the provisions of section 226 of the Greater New York Charter, as amended by Local Law No. 11 of the year 1933, and section 952 of the New York City Charter " the budgets for the year 1938 and the first six months of 1939 be adopted in the amount set forth in the resolution, and that the secretary of the board be directed to transmit to the board of aldermen the said budgets. This resolution was carried by a vote of ten to six. The chair (the mayor presiding) ruled the resolution adopted. The minutes of the board, as well as the original budget, show that each member of the board then signed the budget as thus finally adopted by the board.

From the facts conceded in the papers submitted on this motion, it appears that on November 3, 1937, a special meeting of the board of aldermen was called by the mayor for November 16, 1937, and the board convened on that day. It thereafter considered the budgets, and on December 2, 1937, adopted them without any change. Thereafter what purported to be a true copy of the resolution adopted by the board of aldermen in approving the budgets was forwarded, together with the budgets, to the mayor for his certification. The purported true copy read as follows: " That the Budget for 1938 and the Budget for the period Jan. 1, 1930, to June 30, 1939, be and the same hereby is adopted and approved." The resolution actually adopted by the board of aldermen approved the budget for the year 1938 and the first six months of 1939. The mayor on December 13, 1937, vetoed the budgets. The board of aldermen on December 21, 1937, adopted their original resolution by a three-fourths vote, corrected the error in dates, and resubmitted the corrected resolution with the budgets to the mayor. The mayor still refused to certify these budgets and still has not certified them although they have been certified by the comptroller and the city clerk. These budgets have not been published in the *City Record.*

It is claimed on behalf of the mayor that the aforesaid budgets are a nullity, since the board of estimate on October 20, 1937, in amending the tentative budgets and in adopting as the proposed budgets the tentative budgets as amended, and on October 29, 1937, in finally adopting the budgets, acted by resolution, which did not gain the affirmative approval of twelve votes of the members of said board.

This claim is predicated upon the provisions of the Greater New York Charter (§ 226-a), which stated, in part: " Except as otherwise specifically provided, every act of the board of estimate and apportionment shall be by resolution adopted by a majority of the whole number of votes authorized by this section to be cast by said board. The mayor, comptroller and the president of the board of aldermen shall each be entitled to cast three votes; the presidents of the boroughs of Manhattan and Brooklyn shall each be entitled to cast two votes; and the presidents of the boroughs of the Bronx, Queens and Richmond shall each be entitled to cast one vote. A quorum of said board shall consist of a sufficient number of members thereof to cast nine votes, of whom at least two of the members hereby authorized to cast three votes each shall be present. No resolution or amendment of any resolution shall be passed at the same meeting at which it is originally presented unless twelve votes shall be cast for its adoption."

Prior to the adoption of the Greater New York Charter (Laws of 1901, chap. 466), and pursuant to the provisions of chapter 378 of the Laws of 1897, the legislative power of this city was vested in a board of aldermen and in a council, together styled the " Municipal Assembly." The board of estimate and apportionment was then differently constituted than now. It was composed of the mayor and members appointed by him; comptroller, corporation counsel, the president of the council, and the president of the department of taxes and assessments. Practically the only power of the board of estimate, prior to the enactment of the Greater New York Charter, was that of making an annual budget.

By chapter 465 of the Laws of 1900 there was created a commission to revise the city charter. On December 1, 1900, this commission forwarded to the Governor of this State a copy of the proposed charter, thereafter substantially enacted as chapter 466 of the Laws of 1901, and in an accompanying report discussing the proposed changes in the body and the powers of the board of estimate and apportionment it stated, in part: " The Commission has recommended a considerable extension of the powers conferred upon the Board of Estimate and Apportionment. With respect to what may be called the routine expenditures of the City, whether they are provided for by taxation or by use of the City's credit, the Board of Estimate and Apportionment is given large powers. By reason of the possession of these new powers and of the increase of its freedom in exercising the powers which it has from the beginning of its history possessed, the Board of Estimate and Apportionment under our draft charter will be the most important body in the

City Government. Under the plan of the Commission it will be in reality the center of all legislative activity in relation to financial affairs, and of much of the administrative activity of the City. It will be in effect an upper house of the City Legislature and also a cabinet of the most important adminstrative offices."

In the proposed charter the commission suggested that the new board of estimate and apportionment, in addition to being charged with the duty of making an annual budget, should be empowered to lay out, open, widen, straighten, extend, alter, and close streets and avenues; to initiate changes in the city map; to provide for new streets, parks, bridges, tunnels and approaches to parks, bridges and tunnels; to appropriate the water rates in the borough of Brooklyn for the maintenance and improvement and extension of the water supply of that borough; to appropriate the bridge tolls of the New York and Brooklyn bridges for the maintenance of those bridges.

The manner in which to make a budget, the stated times at which the various stages of the making of that budget were to be commenced and finished, the summoning of persons to participate in the discussions on the making of the budget, were all specifically provided for in the charter. The fear against hasty action which authorized the expenditure of huge sums of money was wholly allayed by the rigid and elaborate program set forth in the body of the charter. With respect to this one act, that is, the act of making the budget, there was thus no fear that the taxpayers of the city of New York would not obtain the product of cool, calm, and considered judgment.

In addition to making a budget, there remained for the board the discharge of those important additional duties above set forth. With respect to these duties as contrasted to the steps in the making of a budget, no provision was made for protracted procedure in the discussion of proposals.

Instead, to guard against hasty action with respect to the discharge of these other duties, there was inserted in the charter a proviso common to many statutes which create legislative bodies: That matters originally introduced to that body must be considered at at least two hearings of that body, unless the approval of such matters be evidenced by a fixed vote in excess of a mere majority of the body. (43 C. J. 528, note 23.)

It is a familiar rule of statutory construction that all of the words of a statute must be read in the light of its entire context. A study of the powers and duties conferred by the Greater New York Charter on the board of estimate and apportionment leads to the inescapable conclusion that the method of procedure in the making of a budget

was separate, distinct, and different from the method of procedure with respect to any other of the powers and duties conferred upon the board.

This cleavage between the act of making a budget and all of the other acts required to be performed by the board of estimate is further evidenced by the action of municipal assembly in creating Local Law No. 11 of 1933 (p. 105). This local law amended the former section 226 of the Greater New York Charter. The language which gave to the board of estimate its budget-making power was taken out of the former section 226 and placed in the new, entire, and separate section 226-c. There was again, in that separate section, meticulously detailed every step required of the board of estimate in the making of a budget and the specific times within which each of those steps must have been taken. The charter itself is thus refutation against the assumption that a budget could be made by a resolution.

From all of the foregoing it is illogical to assume that the steps required to be undertaken by the board of estimate in the making of a budget were each of them an act in a series of proceedings. It is illogical to assume that despite the statutorily fixed and rigid chronological sequence, each of these steps including the final step must have been hurdled by a resolution which in each instance must have been twice ratified unless once favored by three-quarters of the votes of the board.

Compelling and convincing is the argument that the act of making the budget comprised a unified program of interrelated steps, the sequence of which it was beyond the power of the board to alter. This program *originated* when the executive budget was submitted by the mayor to the board on October 2, 1937. It *ended* when the board on October 29, 1937, directed the submission of the budget to the board of aldermen.

Only thus is full meaning given to the words of section 226-c of the Greater New York Charter, that, " The said board shall annually between the fifth day of October and the first day of November meet and consider the budget submitted by the mayor, and make a budget."

The controversy at bar arises out of a failure to distinguish between a resolution that is statutory and a resolution used in parliamentary procedure. This distinction is very evident in interpreting the word " resolution " as used in section 226-a, which is a statutory provision in contrast to the word " resolution" as used by the board in a parliamentary sense in its proceeding under section 226-c. It is worthy of note that section 226-c, contains no reference to such statutory " resolution."

The parliamentary method of successive " resolutions " followed by the board of estimate in its proceedings did not change the character of the act making the budgets. That the board adopted such language is immaterial. (*Matter of Heafy* v. *McCabe*, 270 N. Y. 616, affg. 247 App. Div. 277.)

The fact is that in many stages of the proceedings in the making of the budget for the year 1938 and the first six months of 1939, the board did not act by " resolution," and although in some of the stages that preceded the adoption of the tentative budget, the board did not act by resolution, even the corporation counsel concedes that up to the time that the board adopted the tentative budgets, its proceedings were regular.

This court is, therefore, of the opinion that the budgets for the year 1938 and for the first six months of the year 1939 were legally adopted by the board of estimate on October 29, 1937. This view renders irrelevant any discussion of the validity of the resolution of the board of aldermen in likewise adopting these budgets, the mayor's veto of that resolution, and the readoption thereof by the board of aldermen. To achieve validity these budgets need not have gained the affirmative approval of the board of aldermen. (Greater New York Charter, § 226-c.) Where such approval was attempted to be conferred, the budgets did not lose their validity because such approval may have been deficient.

That the mayor did not certify the budgets as he was required to do pursuant to section 226-c did not invalidate the budgets. The requirement of such certification was ministerial in nature. It was merely meant to furnish evidence of the authenticity of the budgets and did not carry with it any intent that such certification was necessary to make the budgets legal. The veto power of the mayor with respect to the budgets was confined solely to the case where the board of aldermen in adopting the budget would have reduced any items or amounts in the budgets adopted by the board of estimate. To hold that under the circumstances at bar the failure of the mayor to certify these budgets destroyed their validity would be in effect to confer upon him a veto power withheld from him by the charter, for he could in any case, by withholding his signature, accomplish the same result as by a veto of the budgets. This was not the meaning or the purpose of the charter provisions which required the mayors' certification of these budgets.

It is contended that this case presents a moot or academic question since, by the provisions of section 67 of the Greater New York Charter, the power is vested in the board of estimate to fix the salary of every officer or person whose compensation is paid from the city treasury.

These provisions are substantially the same as provisions contained in section 56 of the Greater New York Charter, as amended, by which the power was vested in, and it was the duty of, the board of aldermen, upon the recommendation of the board of estimate and apportionment, to fix the salary of every person whose compensation was paid out of the city treasury. As indicated in *Thoma* v. *City of New York* (263 N. Y. 402), the provisions which vest the power to fix salaries of municipal employees are to be read together with the provisions of the statute with regard to the making of the budget, and, therefore, the power to fix salaries may not extend beyond the power of enumerating such salaries as an item in a budget. Motion granted. Settle order on notice to all parties appearing on this motion.