John R. Tenney, J.
In this article 78 proceeding, the petitioners seek a judgment of this court reversing, annulling and *776 setting aside certain ordinances overriding the Mayor’s veto of the amended budget and for a declaration that the budget as submitted by the Board of Estimate on September 27, 1972, be of the official budget of the City of Syracuse. The petitioners also seek an order directing the Common Council to levy the taxes based upon the September 27 budget.
The City of Syracuse is a municipal corporation governed by and pursuant to a charter established by Local Law No. 13 (Local Laws, 1960, No. 13 of City of Syracuse), effective January 1, 1962, which provides that the fiscal year of the city shall commence on the first day of January. The charter requires that the Board of Estimate “ shall * * * transmit to the council on or before the first day of October, the budget which has been adopted by the board.” (§ 6-102, subd. [3], par. [d].) The charter at section 6-102 (subd. [4], par. [c], cl. [1]) provides that following a hearing the Council shall adopt the budget as presented or as amended by it on or before the 31st day of October. In the event that the Council shall take no final action before the 31st day of October, the budget as adopted by the Board of Estimate shall be deemed to be adopted by the Council.
The Council received the budget on September 27, and at a special meeting on October 6 directed that a notice be published fixing October 16 as the date for public hearing. Following the; public hearing, the Council met at its regular meeting on October 24. The ordinance approving the 1973 budget as submitted by the Board of Estimate was tabled. An ordinance amending the 1973 budget deleting the capital appropriation item in the amount of $2,655,000, hereinafter referred to as Ordinance No. 541, was also tabled. An ordinance entitled ‘ ‘ Amending Ordinance Amending Ordinance Approving 1973 Budget”, which provided for approval of the budget without the capital appropriation item was also tabled. This ordinance is hereinafter referred to as Ordinance No. 542.
At a special meeting of the Common Council on October 26, the Council approved Ordinances Nos. 541 and 542. The City Clerk presented Ordinances Nos. 541 and 542 to the Mayor and Board of Estimate on October 27, 1972. On the 31st day of October, 1972, the Mayor acting under the authority of subdivision (2) of section 4-104 of the city charter vetoed Ordinances Nos. 541 and 542 and transmitted the vetoed ordinances with his veto message to the City Clerk at his home at 11 :50 p.m. that day.
At its regular meeting on November 6, 1972, the Common Council voted by a two-thirds majority to override the Mayor’s *777 vetoes. The Council passed ordinance No. 547 which was an ordinance levying the annual tax based upon the budget as amended by the Council. This ordinance was immediately referred to the Board of Estimate and was unanimously rejected.
Subdivision (2) of section 4-104 provides that if the Mayor disapproves an ordinance, the City Clerk shall present it to the Council at its next regular meeting. The charter further provides that the Council may within 30 days reconsider the vetoed ordinance, and if after such reconsideration, two thirds of the members shall vote to pass the ordinance, it shall take effect notwithstanding the objections of the Mayor.
There are two issues involved in this proceeding. (1) Does the Mayor have the right to veto the budget as amended by the Common Council? (2) If so, does the Council have an opportunity to override the veto?
In Matter of Donnelly v. Shea (50 Misc 2d 787, affd. 25 A D 2d 718, affd. 18 N Y 2d 589), the court held in a similar case that the Mayor has the power under the charter to veto such an ordinance. The court reasoned that the Mayor had the power of veto over ordinances, which was what the Cohoes Council passed in amending the budget. The peculiar wording of the charter, with the use of such words as ‘ ‘ approve and finally approved ”, “ adopt and adopted ” and the additional requirement of entering the budget (estimate) in the Council minutes influenced the court. It held that the Mayor’s approval of an ordinance and entry in the minutes was required before the budget became effective.
The Syracuse Charter has some significant differences. Article IV is entitled “ Legislation ” and vests all legislative powers in the Council. It provides that the Council shall act in relation to legislative matters by local law or ordinance. (§ 4-102.) Proposed ordinances may be introduced by any member. (§ 4 — 103.) Each ordinance shall be signed by the Council’s presiding officer and presented to the Mayor. (§ 4 — 104, subd. [1].) The Mayor shall sign if he approves or if he disapproves, he ¡shall return it to the Council through the City Clerk. The Council may reconsider the ordinance and by a two-thirds majority pass the ordinance which then becomes law. (§ 4r-104, subd. [2].) The Mayor is authorized to disapprove or reduce any items of appropriation (§ 4 — 104, subd. [3]), which is discussed below.
The budget is not mentioned in the legislative section under ordinances but is referred to and treated separately. ‘ ‘ The council shall consider and adopt the annual budget in the manner provided in article VI of this charter.” (§ 4r-107.)
*778 Article VI is entitled “ Budgetary Administration ”. It outlines the items required in the budget, the method of preparation and in' detail outlines the roles of the Board of Estimate and the Council. (§ 6-102.) The Council upon receipt of the approved and published budget from the Board of Estimate “shall consider and adopt the budget ” according to the following procedures (§ 6-102, subd. [4]):
1. Authorize notice of a public, hearing.
2. Conduct the hearing — “to such persons as wish to be heard”. (§ 6-102, subd. [4], par. [b].)
3. Adopt the budget as presented or as amended by it before October 31.
The Council’s right to amend is limited, and it can only reduce salaries with the approval of the Board of Estimate. There is no indication that the Board of Estimate is required to approve any other legal changes the Council may choose to make.
There is no reference to the Mayor nor is there any suggestion that the adopted budget has to be submitted to the Mayor or Board of Estimate for final approval. The implication is that the adoption of the budget is intended to be an administrative function of the Council and is not subject to veto. “ The mayor has veto power only when and to the extent it is given to him by law, and the power cannot be enlarged by construction.” (5 McQuillin, Municipal Corporations [1968 ed.], § 16.42). Under the previous Syracuse (Charter, the court discussed a similar provision: “ it is the common council which finally passes upon the budget, puts it into effect * * *. The board of esthriate * * * can limit the maximum amount which the council can appropriate * * * they cannot compel the council to adopt a single one of their figures.” (Kirk v. McGuire, 32 Misc. 596, 598-599).
Thus, it is apparent that Syracuse has had a tradition of council responsibility for budgets. “A primary command to the judiciary * * * is to ascertain and effectuate the purpose of the Legislature. In finding such purpose, one should look to the entire statute, its legislative history and the statutes of which it is made a part. (See, e.g., Matter of Hogan v. Culkin, 18 N Y 2d 330, 335; Levine v. Bornstein, 4 N Y 2d 241, 244; see, also, McKinney’s Cons. Laws of N. Y., Book 1, Statutes, §§ 92, 95, 96, 97, 98, 111.) ’’ (Rankin v. Shanker, 23 N Y 2d 111, 114.)
Considering the history and the special treatment allotted to the adoption of the budget together with its coverage under a section entitled ‘ ‘ Budgetary Administration ’ ’, the Syracuse Charter appears to differ substantially in its intent from the *779 Cohoes Charter. For example, there is no requirement that the Syracuse Council ‘enter the estimate ’ ’ in its proceedings. There is no indication that any further proceeding is required once the Council has adopted the budget. If it was intended that the Mayor or the Board of Estimate had to approve the Council’s action, it would have been so stated.
If the adoption of the budget is intended to be an administrative function of the Council, it must be strictly followed. (Dixon v. La Guardia, 166 Misc. 889, affd. 253 App. Div. 881, affd. 277 N. Y. 84.) As an administrative function it is not subject to veto. (5 McQuillin, Muncipal Corporations [1968 ed.], § 16.42, p. 192.) Apparently, the Syracuse Charter Commission took great pains to place the power for budget approval in the Common Council. The procedure is carefully and precisely delineated. The public hearing is designed to influence the Council in its final action on the budget. In view of the careful procedure outlined for the public hearing, it clearly is intended to be more than a formality. The charter has reserved certain segments of the budget to the Board of Estimate and prohibited the Council from making increases. Within these guidelines the power to amend the budget is exclusively that of the Council. The approval of the Mayor or the Board of Estimate is not required, and it follows that the Mayor has no statutory veto power over the budget.
The veto power is reserved to ordinances which can only be introduced by members of the Council. (§§ A-103, 4-104.) The budget is submitted by the Board of Estimate and sections A-107 and 6-102 require that it be treated differently than an ordinance regardless of the label placed upon it at the time of its adoption.
Finally, the Council has the exclusive duty to levy and cause to be raised by taxes the amount of the tax budget which shall be determined from the estimated revenues and expenditures. The Council has no authority to make any changes but is bound by the estimates in the budget as adopted. (§ 6-102, subd. [5], par. [b]; § 4 — 108.)
Thus, the enabling statute is a mere ministerial duty of the Council following the adoption of the budget. Although the adoption of the budget can be construed as an “ appropriation ”, it is not considered an appropriation in the same manner referred to in subdivision (3) of section 4-104. (See Matter of Donnelly v. Shea, 18 N Y 2d 589, 592-593 [dissenting opn.].) Because of the distinct separation in the charter of pure budget action by the Council, the intent of the charter is that adoption of a budget not be considered an appropriation by ordinance *780 subject to veto. Any other interpretation would violate the intent and spirit of the charter. (56 N. Y. Jur., Statutes, § 168.)
Apparently, in Syracuse it has been the custom for the Mayor to treat the budget as any other ordinance and reserve to the Mayor the right to approve or disapprove the Council’s actions on the budget. Generally, a court will avoid overturning a well-settled practical construction of a statute if it can do so. (56 N. Y. Jur., Statutes, § 174; 39 N. Y. Jur., Municipal Corporations, § 183; Matter of Green v. Miller, 249 N. Y. 88, 94; General Fireproofing Co. v. Keepsdry Constr. Co., 225 N. Y. 180.) Such reasoning implies an ambiguity but would not apply when there appears to be none. There is also no. mandate to overlook the history of the development of the charter and the interpretations given its predecessor which contained similar provisions.
However, the court is required to reach the issue of the veto in view of the decision in Matter of Donnelly v. Shea (50 Misc 2d 787, affd. 25 A D 2d 718, affd. 18 N Y 2d 589.) There the court authorized the Mayor to veto the action of the Council arguing that the adoption of the budget was an ordinance and, therefore, subject to veto. Despite the obvious intent of the Syracuse Charter, it is sufficiently similar to the Cohoes Charter, that the court is bound to follow the reasoning of the Donnelly decision. (See dissenting opn. of Judge Bergak, p. 592.)
The facts surrounding the Donnelly decision are similar up to the time of the veto. The Cohoes Council did not attempt to override the veto because it did not have the necessary votes. Therefore, the issue of the power to override the veto was not before Justice Staley.
Justice Staley did not hold that the Council could not override. He found that the 30-day period to adopt the budget had passed based upon his interpretation that final action on the budget included the approval of the Mayor within the time limit. He observed {supra, p. 792), however, that “ the time within which the Council might act to override the veto has now expired.”
Thus, it is a fair inference that had the Cohoes Council secured the required three-fourths vote and overrode the veto, he would have sustained its action even though it occurred beyond the charter period. The Syracuse Council has overridden the Mayor’s veto, and its action should be sustained. (Matter of Donnelly v. Shea, 18 N Y 2d 589, 594 [dissenting opn., Bergan, J.].)
Since the power to veto cannot be enlarged (5 McQuillin, Municipal Corporations [1968 ed.], § 16.42), it follows that its *781 exercise cannot be absolute. The use of the veto is limited by the authority of the law from which it is derived. Section 4-104 is unconditional. It gives the Mayor the power to veto any ordinance, and it gives the Council the authority to override any veto. Any interpretation of the charter which takes away a power of the Council which is expressly reserved to it would be inconsistent. If the effect of the deadline for adoption of the budget would be to deprive the Council of its unconditional power, then the charter must be construed to prevent such an inconsistency. In Matter of Donnelly v. Shea (50 Mise 2d 787, 791) the court said: “In construing the charter, it must be read as a whole and in such a manner as to make it harmonious and consistent, if possible. (Matter of Richmond Rys. v. Gilchrist, 225 App. Div. 371).”
The deadline is designed to prevent delays in the adoption of the budget. It forces the Council to assume its responsibility expeditiously. In the event of a dilatory Council or political disagreement, its effect is to prevent the Council from blocking administrative action by refusing to adopt a budget. Thus, the automatic provision ensures the continuity of government. It is not designed to usurp the authority of the Council. It is merely an impetus to action.
Reading the charter as a whole, the deadline cannot be construed as a complete barrier to further Council action. The requirement for an extension of the time is brought about through no fault of the Council but by action of the Mayor. The charter provides for a division of responsibility between the two branches of government. Bach has its separate duty to the public. Neither can deprive the other of the opportunity to perform that duty.
Petitioners argue that had the Council acted faster, it would have had sufficient time to override the veto, within the deadline period. This is not correct. The Corporation Counsel concedes that in complying with the charter requirements the Council could not have acted on the budget any earlier than October 20. The Mayor would then have 10 days in which to veto. Then a special meeting could be called for the purpose of overriding before the last day.
The Council has no authority to call a .special meeting for that purpose. The charter specifically requires that the City Clerk present the veto and the written objections at the “ next regular meeting. ” (§ 4-104, subd. [2]). For a full discussion of the difference between a regular meeting and a special meeting see Matter of Barile v. Comptroller of City of Utica (56 Misc 2d 190, *782 194). The court said (p. 194): “ The distinction is meaningful. Noncompliance is not a mere irregularity. The power delegated by the Legislature for home rule must be exercised in accordance with the procedural requirements of the statute * * * The procedural steps required by enabling acts' of municipalities are regarded as mandatory. (Keeney v. Village of LeRoy, 22 A D 2d 159.) ”
Unless coincidence provided a regular meeting between the veto and October 31, there would be no legal opportunity for the Council to act on the Mayor’s veto of a budget. For all practical purposes, the action by the Council on the budget would be a fruitless exercise. This is so obviously contrary to the intent of the charter that it does not warrant further discussion.
Therefore, the court concludes that if the Mayor had the right to veto the budget, the Council cannot be deprived of its right to override the veto. The fact that the Council could not take action until after the October 31 deadline for final adoption of the budget is no barrier. So long ias the Council fulfilled its obligations within the deadline period (§ 6-102, subd. [4], par. [c], cl. [1]), its time is extended by subdivision (2) of section L-104.
The petition is dismissed, and the budget of the City of Syracuse is declared to be that passed by the Council on October 26, 1972, which was reconsidered and passed again by two thirds of all the members of the Council on November 6,1972.