(89 App. Div. 291.)

PEOPLE ex rel. NEW YORK & R. GAS CO. v. CROMWELL et al.

(Supreme Court, Appellate Division, Second Department.  December 30, 1903.)

1. GAS COMPANIES—FRANCHISES—RIGHTS AND STREETS—STATUTES—CONSTRUC-
    TION.
        Laws 1848, p. 51, c. 37, § 18, provides that every gas company organized'
    thereunder shall have power to lay gas conductors through the streets.
    in the city, village, or town in which it is located, with the consent of'
    the municipal authorities thereof, under such reasonable regulations as.
    they may prescribe.  Held that, since such act did not prescribe a definite
    body by which consents to lay conduits in the streets might be given,.
    such consent, in so far as the streets of a town were concerned, might be-
    given by the highway commissioners thereof.

2. SAME—IMPLICATION.
        Under Laws 1848, p. 51, c. 37, § 18, authorizing a gas corporation or-
    ganized thereunder to lay conduits in the streets of a city, village, or
    town with the consent of the municipal authorities, where the highway
    commissioners of a town acquiesced without objection in the acts of a.
    gas company incorporated under such act in laying its conduits in the
    streets for nearly half a century, it would be presumed that they had:
    given their consent to the gas company's use of the streets.

3. SAME—EXTENT OF USE—NEW STREETS.
        Where a gas company incorporated under Laws 1848, p. 51, c. 37, § 18,.
    authorizing such companies to use the streets of a city or town in which.
    to lay its mains with the consent of the municipal authorities was granted'.
    such consent, it was empowered thereby to lay mains in new streets:
    opened in such town as a matter of law.

Appeal from Special Term, Kings County.

Application for mandamus by the people, on the relation of the
New York & Richmond Gas Company, to George Cromwell, as pres-
ident of the borough of Richmond, and others, to compel the issuance
of a permit to lay gas pipes in new streets laid out in the towns of
Castleton, Northfield, and Southfield.  From an order denying a mo-
tion for an alternative writ, relator appeals.  Reversed.

Argued before BARTLETT, JENKS, WOODWARD, HIRSCH-
BERG, and HOOKER, JJ.

William N. Dykman (Arthur E. Walradt, on the brief), for appel-
lant.

James McKeen (Albert E. Hadlock and Walter S. Brewster, on the
brief), for respondents. ·

WOODWARD, J.  The relator is the successor, by consolidation,.
to the rights and franchises of the Richmond County Gaslight Com-
pany, which last-mentioned company and the relator have been fur-
nishing gas for public and private consumption since the year 1856.
The Richmond County Company was organized in that year, under
the provisions of chapter 37, p. 48, of the Laws of 1848, for the pur-
pose of supplying gas in the towns of Castleton, Northfield, and
Southfield, and it is alleged on the part of the relator that consents
were secured in each of those townships immediately after the or-
ganization of the said corporation.  It is not questioned that the
Richmond County Company and its successor have furnished gas in.
each of these townships, both before and since the various legislative

enactments which have resulted in subdividing these towns into villages, etc., and eventually consolidating them under the Greater New York Charter. The relator, desiring to lay mains in certain streets not heretofore occupied, applied to the commissioner of water supply, gas, and electricity for a permit, and that official denied the same upon the ground, as stated in his return, "that no rights or franchises in the streets, lanes, avenues, or highways, or portions thereof, subject to their application, has been shown to be in the applicant corporation." Upon the moving papers before the Special Term an issue was raised, and the relator asked for an alternative writ, which was denied, and from the order denying this motion appeal comes to this court.

In the view which we take of this matter, it does not seem to be necessary to follow the various acts of the Legislature which have divided these original towns of Castleton, Northfield, and Southfield, nor yet to consider the new relations which were brought about by the Greater New York Charter, which went into effect on the 1st day of January, 1898. The question is, did the relator allege facts upon this application sufficient, if proved, to show that as the successor of the Richmond County Company it has a franchise to do business within the territory embraced within the original towns of Castleton, Northfield, and Southfield? If it did, then it had a right to have the permits which were asked for on the 9th day of March, 1903, and the denial of the motion for an alternative writ of mandamus was not justified. The Richmond County Company, as we have seen, was organized under the provisions of chapter 37, p. 51, of the Laws of 1848, section 18 of which provides as follows:

"Any corporation formed under this act shall have full power to manufacture and sell, and to furnish such quantities of gas as may be required in the city, town or village where the same shall be located, for lighting the streets, and public and private buildings, or for other purposes; and such corporation shall have power to lay conductors for conducting gas through the streets, lanes, alleys and squares, in such city, village or town, with the consent of the municipal authorities of said city, village or town and under such reasonable regulations as they may prescribe," etc.

There is no doubt that the Legislature might have granted a franchise direct to the corporation, without the consent of the local authorities. Ghee v. Northern Union Gas Co., 158 N. Y. 510, 513, 53 N. E. 692. In the statute now before us the grant of power is very broad and liberal, conditioned only upon the consent of the "municipal authorities, * * * and under such reasonable regulations as they may prescribe." No method of manifesting this consent is pointed out, no definite body or bodies in the cities, villages, or towns are pointed out, and the fair and reasonable inference is that any body which represents the community in a general sense, or in respect to the public rights which are to be granted, is authorized to give this consent. In a city there would be no reason to doubt, in the absence of some definite provision of law to the contrary, this body would be the common council or other body having like powers (Ghee v. Northern Union Gas Co., supra), and in a village the board of trustees, while in a township the commissioners of highways, who are

charged generally with the care of the streets, roads, etc., would probably represent the "municipal authorities" referred to in the statute. But we do not think it is necessary to decide this question. It is sufficient, for the purposes of this case, to hold that the action of the highway commissioners of these several towns in the year 1856, acquiesced in without objection for nearly half a century, in the absence of a plain provision to the contrary, raises a presumption of the consent of all of the municipal authorities of the several towns, and particularly where the consents so granted were acted upon promptly, and the corporation entered upon the discharge of its obligation to the public in supplying gas in the various townships under the provisions of the law. In Jennings v. Van Schaick, 108 N. Y. 530, 532, 15 N. E. 424, 2 Am. St. Rep. 459, where the plaintiff was injured by falling into an opening in the sidewalk, the court say:

"It does not appear that the defendant, who owned the premises, had ever obtained from the municipal authorities any formal license or permission to construct the opening in the sidewalk, but such authority was a reasonable inference from an acquiescence of eighteen years without objection from the city."

So, in the case now before us, if the highway commissioners were not the municipal officers of the towns who were charged with the responsibility of acting, if they did act, and no other municipal authorities questioned their right to do so, but stood by and saw the plant installed, they would, unless the statute specially provided the method in which their consent was to be evidenced, be deemed to have ratified the consent of the highway commissioners, and the presumption would arise that they had given their consent. Schubkegel v. Butler, 76 App. Div. 10, 13, 78 N. Y. Supp. 644; Jorgensen v. Squires, 144 N. Y. 280, 285, 39 N. E. 373; Donnelly v. City of Rochester, 166 N. Y. 315, 318, 59 N. E. 989. This result would, it seems to us, under the authorities cited, follow even were it not possible to show any formal action on the part of the highway commissioners, for it is not suggested that the corporation did not construct its plant and distribute its gas in these several towns nearly a half century ago, and it appears that several of the villages which have since been created have taken gas under contracts with the relator and its predecessor. To say at this late day that the respondent may deny to the relator its rights under its franchise upon any technical question growing out of the manner of the consent given so long ago is to give precedence to unimportant forms above the substantial requirements of justice.

If we are correct in this view of the case, it would follow that the relator is possessed of a franchise, and upon proof of the facts would have a right, under the ruling made in People ex rel. Woodhaven Gas Co. v. Deehan, 153 N. Y. 528, 47 N. E. 787, to enter into and upon new streets created in the territory for the purpose of discharging its obligations to the public. "When the right to use the streets has been once granted in general terms to a corporation engaged in supplying gas for public and private use," say the court in the last-cited case, "such grant necessarily contemplates that new streets are to be opened and old ones extended from time to time, and so the

privilege may be exercised in the new streets as well as in the old";
and as the municipal authorities, under the act of 1848, were only per-
mitted to make reasonable regulations in granting their consent, it
cannot be assumed that they have attempted to limit the powers
granted to the corporation by the statute.

The order appealed from should be reversed, with costs, and the
application for an alternative writ of mandamus granted.

Order reversed, with $10 costs and disbursements, and application for al-
ternative writ of mandamus granted, with costs to abide the event. All con-
cur.