(54 Misc. Rep. 21)

PEOPLE ex rel. FLATBUSH GAS CO. v. COLER et al.

(Supreme Court, Special Term, Kings County. April 3, 1907.)

1. ELECTRICITY—ELECTRIC LIGHT COMPANIES—USE OF STREETS—CONSENT OF MUNICIPAL AUTHORITIES.

Under Acts 1888, p. 1060, c. 583, tit. 16, § 2, giving to the department of parks of the city of Brooklyn the full power to govern the Ocean Parkway from its terminus within the city to the ocean, a company which, under contract with the commissioner of parks, laid electric wires in the parkway and furnished light to the city and others for 10 years, without objection by the city, had the consent of the proper authorities to lay its wires and conduits, and was therefore entitled to a permit to open the parkway to connect buildings on abutting lands with the wires maintained in the parkway.

2. SAME—VALIDITY OF FRANCHISE.

Under Greater New York Charter, Laws 1897, p. 25, c. 378, § 73, forbidding the grant of any franchise to use the streets for a longer period than 25 years, where a company has laid electric wires and furnished light to the city and others for 10 years under a contract with the commissioner

of parks giving it the right to lay wires and conduits, without limiting the time for the exercise of the privilege, the contract is valid for the exercise of the right for 25 years from its date.

Application by the people, on the relation of the Flatbush Gas Company, for mandamus to Bird S. Coler, as president, etc., and others. Peremptory mandamus granted.

William N. Dykman, for the motion.

James D. Bell, Asst. Corp. Counsel, opposed.

CRANE, J. Application having been made to the defendants for permits to open Ocean Parkway, in the Thirty-First Ward of the borough of Brooklyn, at the corner of Avenue I, for the purpose of connecting buildings on abutting lands with electrical wires maintained by the relator in the parkway, and the permits having been refused, this motion for a peremptory writ of mandamus directing the issuance thereof has been made.

The objections to the issuance of the permits, and also to the granting of these motions, are stated to be, first, that the Flatbush Gas Company has never received, pursuant to article 6 of the transportation corporation law (Laws 1890, p. 1146, c. 566), the consent of the municipal authorities to lay its wires and conduits in Ocean Parkway; and, second, that if the consent which it did obtain is to be considered as coming from the proper source, yet it was void as an attempt to grant a perpetual franchise, contrary to the provisions of section 73 of the Greater New York charter (Laws 1897, p. 25, c. 378).

The Ocean Parkway was, prior to 1888, a highway running from Prospect Park, in the old city of Brooklyn, through a portion of that city and through the towns of Flatbush, New Utrecht, and Gravesend, to the ocean. Of course, the authorities of Brooklyn had no control or jurisdiction over that portion of it lying outside the then city limits, as the highway commissioner of each town through which it passed was vested with authority over that part which was within his township. Thus, under ordinary circumstances, this highway would have been subjected to four distinct powers. Acts 1888, p. 949, c. 583 (charter of the city of Brooklyn), however, gave to the department of parks of Brooklyn full and exclusive control and power over it, with the right to direct the public use thereof and to pass and enforce laws and ordinances for its regulation and government. Thus, under the circumstances existing in 1888, the common council of Brooklyn could legislate and grant franchises for the city, while the park department had control of and authority over Ocean Parkway within and without the city. Unless this be so, the phraseology of section 2, tit. 16, p. 1060, of the charter of Brooklyn, is diffuse and confused. "The said department of parks," reads that section, "shall have the exclusive government, management and control, subject, however, to the laws of the state and to the powers of the common council in relation thereto, of all the parks, squares, parkways and public places in the city, and full and exclusive power to govern and manage the Ocean Parkway from the circle at the southwesterly angle of Prospect Park to the ocean," etc.

Subsequently all the outlying towns above mentioned were annexed to the city of Brooklyn, but the powers of the park department over the

parkway were not changed or modified. When, therefore, in 1896 it was determined to light this highway with electric lights, who were the "municipal authorities" whose consents were required by the transportation corporations act to lay and construct wires in the street? That the Legislature could have made the park department such an authority is determined by Wilcox v. McClellan, 185 N. Y. 9, 77 N. E. 986, and that it did so constitute that department seems evident from the act of 1888 and surrounding circumstances. People ex rel. N. Y. & R. Gas Co. v. Cromwell, 89 App. Div. 291, 85 N. Y. Supp. 878. Accordingly, on the 2d day of January, 1896, the then commissioner of parks, Frank Squier, entered into a contract with the relator, the Flatbush Gas Company, to furnish a certain number of electric lights for the Ocean Parkway for the period of three years from January 1, 1898, giving to that company the right to erect its poles, wires, and necessary appliances in the street.

But, if it be that the provisions of the charter above quoted from mean, as the corporation counsel claims, that the park department had full and exclusive control of the Ocean Parkway, subject to the powers of the common council, as in the case of Prospect Park, then, as the Flatbush Gas Company entered upon the highway under the contract of 1896, laid its wires, and has furnished light to the city and others for the past 10 years, it must be presumed that the common council of the city of Brooklyn and the other municipal authorities succeeding that body have consented to such user, construction, and operation. People ex rel. Richmond Gas Co. v. Cromwell, 89 App. Div. 291, 85 N. Y. Supp. 878. As to the first objection, therefore, I consider that the relator obtained the consent of the proper authorities.

As to the second objection to the granting of the writ a more serious question is presented. The Greater New York charter (chapter 378, p. 25, Laws 1897) was passed and approved May 4, 1897, section 73 of which enacted that:

"After the approval of this act, no franchise or right to use the streets, avenues or highways of the city shall be granted by the municipal assembly to any person or corporation for a longer period than twenty-five years."

These words have been held to apply (Blaschko v. Wurster, 156 N. Y. 442, 51 N. E. 303) to designate the aldermen, common council, or governing body having the power to deal with the subject-matter of the restriction prior to the date when the new government was to go into full operation, and therefore were controlling after May 4, 1897, upon the "municipal authorities" of the city of Brooklyn having the power to consent to the laying of wires in Ocean Parkway. After that date consents or franchises could be granted for no longer a period than 25 years.

As above stated, the park commissioner of Brooklyn made a contract with the Flatbush Gas Company January 2, 1896, to light Ocean Parkway for the period of three years by overhead construction. On August 4, 1897, or just three months after the Greater New York charter was approved, this contract was abrogated or modified by permitting or requiring underground wires or construction and giving to the Flatbush Gas Company the right to furnish electrical current to such public or private consumers as may be desirous of using it. While it is provided

in this latter contract that it shall continue for three years from September 1, 1897, an added clause reads as follows:

"The conduit laid by the party of the second part shall remain the property of the said party of the second part after the expiration of the term of this contract, and the right and privilege hereinbefore granted to the party of the second part to occupy said conduit with wires and to extend its wires to consumers and to supply electric current to them shall continue in full force and effect; but this agreement shall in no way operate to give the said party of the second part any exclusive privilege."

If this paragraph grants, or was intended to grant, a consent or franchise in perpetuity, I consider it contrary to and in violation of section 75 of the charter, and void as such. But the "municipal authorities" could have given such consent or made such contract for 25 years, and as the company has been in use and possession of the wires and conduits, furnishing lights, for 10 years, and extending its operations during that time with the consent and permission of the city departments, I think its franchise is at least good for 25 years, especially as the contract of August, 1897, makes no mention of any time during which the company may supply private consumers.

The franchises attempted to be granted in the cases of Blaschko v. Wurster, supra, and Hendrickson v. City of New York, 160 N. Y. 144, 54 N. E. 680 were clearly an attempt to evade the provisions of the Greater New York charter, which was about to go into effect, and the circumstances of their granting evidenced bad faith and deliberate breach of duty on the part of the authorities. Consequently these acts were void, and the courts refused to consider the grant to the railroad in the Blaschko Case good even for 25 years. Like reasons, however, cannot apply here, where the gas company has been operating under some kind of a franchise for 10 years with the consent, approval, and for the benefit of the city.

The motion for a peremptory mandamus is, for the above reasons, granted.