ELLEN NEVINS, Plaintiff, *v.* GUS FRIEDAUER, JOHN O'NEIL and THE CITY OF NEW YORK, Defendants.

(Supreme Court, Kings Special Term for Trials, November, 1920.)

Riparian rights — rights of upland owners — colonial patents — navigable waters — Gravesend bay — filled in lands.

Riparian rights are an incident to the ownership of the upland, *i. e.,* property rights which cannot be taken except by consent or proper compensation. (P. 442.)

Under the rule that nothing passes by implication in a grant by a sovereign beyond what is essential to the enjoyment of

the thing granted, patents and grants bounded upon or by the sea or navigable waters where the tide ebbs and flows, convey title only to high water wark. (P. 441.)

The rule is slightly different, however, where the owner of the upland, having a grant from the state to lands under water adjacent to the uplands, fails to include his rights to the lands under water, in a conveyance of the uplands. (Id.)

Colonial patents show that the town of Gravesend owned all the lands under Gravesend bay, and in compliance with the statute (Laws of 1883, chap. 458) which provided a method for the sale of lands owned by the towns, a notice was duly published describing certain property proposed to be sold, as "old Lot 44" which was shown on the "Kowalski map" duly filed. This map showed the northerly line of the land as running along the high water line of Gravesend bay. A proposition by plaintiff's predecessors in title to purchase the lot having been duly accepted at a town meeting, the trustees gave a deed which described the northerly line as "thence west along said bay, etc.," and attempted to convey all the lands under water adjacent to and in front of the upland, though the offer to purchase did not include such lands, and there was no consideration for a transfer thereof. *Held,* that though the title to the lands under water did not pass by implication, the plaintiff as riparian owner had the right of access, the right of accretion, the right to the reasonable use of the water of the bay for all legitimate purposes, and the right to have the shores of her land washed by the adjacent waters. (Pp. 439–442.)

Where, therefore, land under water in front of plaintiff's premises has been filled in, largely by the United States government and partly by natural causes, and such governmental action has neither been consented to nor ratified by plaintiff and it cannot be determined precisely how much of the filled in land, of which the city of New York has taken possession, and exercised acts of ownership, resulted from the fill by the government, the plaintiff in an action against the occupancy of the filled in land by said city or its licensees, will be granted a judgment restraining the erection of any building thereon and commanding the removal of building materials therefrom, and adjudging that the title to the upland to mean high water mark, as it existed in 1920, is vested in plaintiff, and that the city of New York is the owner in fee of the land below mean high water. (Pp. 442–444.)

ACTION for an injunction.

Cullen & Dykman (William N. Dykman, of counsel), for plaintiff.

John P. O'Brien (Charles J. Nehrbas, of counsel), for defendants.

CALLAGHAN, J.   There is no question but that the town of Gravesend owned and had the right to convey the fee title of the lands under water in Gravesend bay to John Tracey, one of the plaintiff's predecessors in title. *Somerville* v. *City of New York,* 78 Misc. Rep. 203. The question is, did the town make such a conveyance?

The statute (Laws of 1883, chap. 458) provided a method for the sale of lands owned by the town of Gravesend. To comply with that statute, a notice was required to be given of a town meeting, whereat the electors of the town could vote on a proposition to sell. A notice was duly published, which described the property in question to be sold as " Old Lot 44." The lot number had reference to a lot shown on the Kowalski map, which had been duly filed. That map showed the northerly boundary line of the land as running along the high water line of Gravesend bay. The proposition to purchase the lot was duly accepted by a vote of the electors at the town meeting. Thereafter, the trustees of the town gave a deed by which the property was described by metes and bounds, the northerly boundary line being described as " thence west along said Bay, etc.," and attempted to convey to the grantee all the lands under water adjacent to and in front of the upland.

The statute provided that the trustees of the town should not have power to sell or give title to any

lands of the town, but that they might receive any proposition in writing for the purchase or release of the title or claim of the town and consider the same; that if they considered it for the best interest of the town to accept the proposition, they should publish a notice as therein prescribed " *stating plainly and fully the proposition or propositions they had received* " and calling a town meeting to accept or reject such proposition. It further provided that the voting should be by ballot, which, among other requirements, should contain on one side thereof " *a distinct and sufficient designation of the lot by its map number or otherwise.*"

Were the notice for the town meeting and the proposition submitted to the voters sufficient to apprise the electors of the town of Gravesend that they were voting upon a proposition to sell the land under water? Concededly the lot as shown on the map did not extend below mean high water. It is to be presumed that the electors had knowledge of that fact and that upon voting in favor of the proposition to sell they had in mind only the sale of the property shown on the map as lot 44. It may be that they would not have consented to the sale of the land under water, having in mind that it should be kept for the benefit of all the people. At any rate it was the purpose of the statute that notice should be given to the electors of the propositions received by the trustees for the sale or release of the town's property; and an adherence to the terms of the statute was necessary to give title. The trustees, in giving the deed, were mere agents performing an administrative act. The real owners or the principals were the voters of the town. They alone had power to sell the town's land. The trustees might as well have included in the deed any other parcel or strip of land. They had just as

much authority to convey any other lot as they had
to convey the land under water. The colonial patents
show that the town owned all the land under
Gravesend bay. It cannot be seriously urged that the
land under water included a strip across the bay, yet
the deed purports, on its face, to convey all the lands
under water adjacent to the upland specifically
described. The offer to purchase did not include
lands under water and there was no consideration for
the transfer of such land.

But plaintiff contends that, in any event, as title to
the lands under water was vested in her predecessors
in title by reason of the sale of the upland, title to
the land under water passed by implication. The rule
is, however, that nothing passes by implication in a
grant by a sovereign beyond what is essential to the
enjoyment of the thing granted. Therefore, patents
and grants bounded upon or by sea or navigable
waters where the tide ebbs and flows convey title only
to the high water mark. *Langdon* v. *Mayor,* 93 N. Y.
129, 144; *Gould* v. *Hudson River R. R. Co.,* 6 id. 522;
*Matter of City of New York,* 212 id. 325. The rule
is slightly different, however, where the individual
owning both sides of a navigable stream indicates by
a devise an intention to convey the land under water
(*Smith* v. *Bartlett,* 180 N. Y. 360); or where the
grantor of the upland, having a grant from the state
to the lands under water adjacent to the uplands con-
veyed, fails to include his rights to lands under water.
*Archibald* v. *N. Y. C. & H. R. R. R. Co.,* 157 N. Y. 574.

The plaintiff, however, is not to be denied relief.
She is a riparian owner and entitled to all benefits
as such. She had the right of access, the right of
accretion, the right to the reasonable use of the
waters for all legitimate purposes, and the right to

have the shores of her land washed by the adjacent waters. These rights were not affected by the opening of Neptune avenue, as the fee title in that street remained in the upland owner. The city acquired only a highway easement in the property. *Johnson v. Grenell,* 188 N. Y. 407; *Robins Dry Dock & Repair Co.* v. *City of New York,* 155 App. Div. 258; affd., 213 N. Y. 631.

The riparian rights are an incident to the ownership of the upland, *i. e.,* property rights which cannot be taken except by consent or proper compensation. This plaintiff finds herself deprived of her rights as a riparian owner. She has been changed from a littoral to an inland owner. The land under water in front of her premises has for some distance been filled in, largely by the United States government and partly through natural causes. There is no way of telling just how much of the fill was placed there by the government or how much through natural causes. So much as comes by natural causes in the usual course is the accretion which goes to plaintiff and is one of the property rights which she has as a riparian owner. The act of the government in filling in the land under water was without plaintiff's consent and presumably against her will. She has not ratified the act. She has protested, by bringing this action against the occupancy by the city of New York or its licensees of the filled-in land. The city apparently is content with the situation. It has found land formerly under water partly filled in by an agency over which it had no control. It has not protested against that act or demanded compensation for damage, if any, it has suffered. It has ratified, approved and confirmed the act of the government, and has taken possession of the filled-in land and exercised acts of ownership thereof to the great detriment of the plain-

tiff. The city has a right to proceed against the government for damages caused by the filling in on its land if any damage has been suffered. Instead of taking that course, it has elected to ratify the act of the government and to utilize the land for its own benefit. Concededly, if the city had filled in the land in question, such land would have been regarded as an accretion and fee title would, by reason of the wrongful act, have passed to the upland owner. *Steers* v. *City of Brooklyn,* 101 N. Y. 51. There can be no difference in principle between the doing of a wrongful act and the ratification of such an act when done by another.

The plaintiff here seeks equitable relief. She asks that her riparian rights be preserved, and that the defendants be restrained from erecting buildings upon the filled-in lands, thus enabling her to exercise the right of ingress and egress to and from the waters of Gravesend bay. She is clearly entitled to that relief. *Tiffany* v. *Town of Oyster Bay,* 192 App. Div. 126. The situation, therefore, is that, if the title to the filled-in lands is to be adjudged in the city, it cannot enjoy the benefits to the land in question, and the upland owner is not only deprived of the riparian rights but is denied the use of a strip of land which will be of little or no use to the owner of the land formerly under water. Besides the right to the natural accretion, concededly the property of the plaintiff will be denied her. It cannot be determined precisely how much of the filled-in lands resulted from the fill by the government and how much from natural causes.

It follows, therefore, that a judgment should be entered herein restraining the erection of the buildings upon the premises and commanding the removal of materials placed there for that purpose, and

adjudging that the title to the upland to mean high water, as it existed in 1920, is vested in plaintiff, and that the land below mean high water is owned by the city of New York in fee.

Judgment accordingly.