CITY OF NEW YORK, Plaintiff, *v.* BROOKLYN BOROUGH GAS Co., Defendant.

Supreme Court, Special Term, Kings County, June 1, 1951.

*John P. McGrath, Corporation Counsel* (*Phillip Wellens* of counsel), for plaintiff.

*Andrew F. Von Thun* for defendant.

DI GIOVANNA, J. In this action an injunction is sought to restrain the defendant from maintaining a bridge and gas pipe lines attached thereto over the navigable waters of Coney Island Creek, and gas pipe lines now lying in the bed thereof; and, for a direction to the defendant to remove the bridge and pipes; and, judgment is asked for the reasonable value of the use and occupation during the period of such unlawful invasion and occupancy.

It is admitted, in the pleadings, that the plaintiff is the owner of the bed of Coney Island Creek lying within the block situated

easterly of West 12th Street, north of Neptune Avenue, westerly of West 6th Street and south of Canal Avenue, in the borough of Brooklyn, the limits of said Coney Island Creek being within block 7248A on the land map of the city of New York, county of Kings; that plaintiff's title is derived from the ancient charters of the Town of Gravesend, which town was annexed to the city of Brooklyn, and subsequently consolidated with the city of New York by virtue of chapter 378 of the Laws of 1897; that Coney Island Creek is a navigable body of water and that the ownership of said Coney Island Creek is subject to riparian rights of owners of uplands; that defendant is in possession of upland within the block described and is maintaining upon said upland gas tanks, a retort house and iron tank, and certain other structures and improvements used in connection with the manufacture of illuminating gas. A concession was made during the trial by the plaintiff, for the purposes of this action only, that the defendant has the right to be in the business of manufacturing and distributing illuminating gas.

Issues are raised by the pleadings charging the defendant with having unlawfully invaded that part of the navigable creek in front of defendant's upland on both sides of the creek by maintaining over said creek a bridge and gas pipes attached thereto without warrant of law, and by unlawfully maintaining a gas main and other pipes and structures over said bridge and in the bed of the creek; that such maintenance of the aforesaid structures constitutes an illegal invasion of the rights of the plaintiff and therefore constitutes a public nuisance.

The answer sets up as an affirmative defense the incorporation of the defendant in 1898 and the assignment to it of a grant originally received by John Lockwood on July 26, 1877, from the commissioners of highways of the Town of Gravesend, and a further grant on December 6, 1877, modifying and extending the original grant.

Mesne conveyances (defendant's Exhibits C to M inclusive) resulted in a final transfer of the grants to the present defendant on March 5, 1898.

The answer further alleges that, pursuant to the grants of the highway commissioners of the Town of Gravesend, the grantees and their successors entered upon the performance of the grants, completed work for the manufacture of gas and began to supply and did continue to supply gas to the inhabitants of the territory of Coney Island and the Town of Gravesend; that pursuant to the grants, pipes and iron mains for the

transportation of illuminating gas were laid under the waters of and in and on the bed of Coney Island Creek; that in 1907 a bridge was constructed spanning the creek and that said bridge was constructed by written permission of the department of docks and ferries of the city of New York granted on January 29, 1907; that the pipes laid in the bed of the creek and attached to the bridge and the bridge itself are necessary for the business of distribution of gas.

The answer asks for a declaration of the rights of the defendant.

Basically, it is the contention of the defendant, by its prayer for a declaration of its rights, that its present user of the bed of Coney Island Creek, and its ownership and use of the bridge and pipes attached thereto, cannot now be disturbed because:

1. The grants of 1877 expressly gave the defendant or its predecessors that right; or

2. The letter of 1907 expressly gave the defendant that right; or

3. The right arises by implication from the terms of the express grants; or

4. In any event, its continued user since either 1877, or 1907, has operated to prevent assertion by the plaintiff of any demand for enjoinder thereof.

After a trial of this action it is clear that the answer to the issues lies in a determination of the validity of the grants of 1877 and the extent to which rights were granted to the defendant and its predecessors to lay pipes and structures in the bed of and under and across the navigable waters of Coney Island Creek. Examination of the grant of July 26, 1877 (defendant's Exhibit A), shows that:

" In consideration of the premises hereinafter named, the said commissioners of the ' Town of Gravesend ' have bargained, sold, granted and conveyed and by these presents do bargain, sell, grant and convey unto the said Lockwood, his executors, administrators and assigns all of the sole and exclusive right and privilege that they, the said commissioners have the power to grant and convey for the said purpose of digging trenches and the *laying down of Gas pipes in the streets, sidewalks, lanes and alleys of said ' Coney Island '* as they are now laid out or may hereafter be laid out, as may be necessary for the furnishing of Gas to the inhabitants of said Island for illuminating and other purposes and for the lighting of the streets thereof, as well as for the repairing of the pipes from time to time as it may become necessary.

" And for this purpose to occupy such portions of said *streets, sidewalks, lanes, alleys, etc. of* said Island, as it is absolutely required, not unnecessarily impeding travel. Said trenches to be filled up again with all necessary dispatch and the earth to be replaced in as good condition as it was before as near as may be." (Emphasis supplied.)

The grant of December 6, 1877, after reciting substantially the provisions of the earlier grant, went on to say: " and whereas it is deemed desirable and we, the said Commissioners, have agreed and consented, to extend the said rights and privileges to the said Lockwood for other and all parts of our said town and Township of Gravesend, for the consideration and upon the conditions named in said instrument: Now, therefore know ye, that in consideration of the premises and of the benefits to be derived by the said Town from the distribution and supply of illuminating Gas by the said Lockwood under the said grants made and hereby made, *we do hereby agree that the said grant shall extend to and throughout the whole Town of Gravesend, as well as, and in addition to the said Coney Island* specially mentioned in said instrument, and we do hereby give, grant and convey to the said John Lockwood, his executors, administrators and assigns, and consent and agree, that he and they shall have and use, all the right and privilege to him and them, solely and exclusively, *that we have the power* to grant and convey, to dig trenches, lay down pipes and to do all other things necessary for furnishing and supplying illuminating Gas at all places in and throughout the said town of Gravesend ". (Emphasis supplied.)

The court has set forth the essential provisions of the two grants to illustrate the difference between them. The first grant gives the right to lay down " Gas pipes in the streets, sidewalks, lanes and alleys of said ' Coney Island ' '', and the second grant extends the right to " dig trenches, lay down pipes and *to do all other things necessary* for furnishing and supplying illuminating gas at all places in and throughout the said town of Gravesend as well as and in addition to the said Coney Island." (Emphasis supplied.) However, those words " to do all other things necessary " are then limited by the words " that we have the power to grant and convey ". So, while it is argued by defendant that " to do all other things necessary " impliedly gave defendant the right to use the bed of the creek as a means of access from Coney Island to the town of Gravesend for its

gas pipes, it becomes of prime importance to determine whether the power to make such a grant was vested in the highway commissioners of the Town of Gravesend. Whatever grant they attempted to effect was recognizably subject to and limited by the words " that we have the power to grant and convey ". No mention is made by defendant or its predecessors in any of the mesne conveyances of any rights with respect to navigable streams. The indenture of July 16, 1878, between John Lockwood & Company and the Kings County Gas Light Company, made a conveyance of " all the sole exclusive right and privilege granted by the commissioners of Highways of the Town of Gravesend to John Lockwood * , * * for the purpose of digging trenches and laying down of gas pipes in the streets, sidewalks, lanes and alleys of Coney Island and all other parts of said Town of Gravesend as they are now laid out or may hereafter be laid out as may be necessary, for the furnishing of gas to the inhabitants ". (Defendant's Exhibit G.)

The indenture (defendant's Exhibit I) made September 1, 1882, between Henry B. Plant and Margaret J. Plant and the Coney Island Fuel Gas and Light Company, refers to the 1877 grant as one given " for the purpose of digging trenches and the laying down of Gas Pipes in the Street, Sidewalks, lanes and alleys of Coney Island and all other parts of said Town of Gravesend as they are now laid out or may hereafter be laid out as may be necessary for the furnishing of Gas to the inhabitants of said Island ".

In defendant's Exhibit H, a transfer from the Sheriff of the County of Kings to Henry B. Plant, made April 24, 1882, reference is made to the original grants " for the purpose of digging trenches and the laying down of gas pipes in the streets sidewalks lanes and alleys of Coney Island and all other parts of said Town of Gravesend as they are now laid out or may hereafter be laid out as may be necessary for the furnishing of gas to the inhabitants of said Island ".

In the indenture made March 5, 1898 (defendant's Exhibit C), there is granted " all of the sole and exclusive right and privilege granted by the Commissioners of Highways of the Town of Gravesend to John Lockwood of the City of New York by two certain indentures bearing date July 26, 1877, and December 6, 1877, and by him transferred to the Kings County Gas Light Company *for the purpose of digging trenches and the laying down of gas pipes in the streets, side-walks, lanes and alleys of*

*Coney Island, and all other parts of said town of Gravesend as they are now laid out* or may hereafter be laid out as may be necessary for the furnishing of gas to the inhabitants of said Island ''. (Emphasis supplied.)

In the certificate of incorporation of the Kings County Gas Light Company (defendant's Exhibit K) filed in the office of the Secretary of State on December 17, 1877, in paragraph '' Second '' it says: '' Second: That the objects for which the said Corporation or Company is formed, are to manufacture, sell, and supply Gas for lighting streets, roads, and sidewalks, and public and private houses and buildings; and for the manufacture, sale, and supply of illuminating Gas for all purposes and in all ways in and for which it may be used and required.''

No mention is expressly made in either grant or in any of the exhibits of gas pipes to be laid in or on the bed of Coney Island Creek.

If the commissioners of highway of the Town of Gravesend had the power to grant use of the bed of the navigable creek to defendant, plaintiff as successor to the rights of the Town of Gravesend, did not get absolute ownership of the bed of the navigable creek. It could have only such ownership as was subject to easements or other vested rights granted to the defendant or its predecessors. If, in fact, a valid right was given to the defendant or its predecessors to lay those pipes in the bed of the creek and to bridge the creek, the consideration therefor being distinctly stated in the grant to be '' in consideration of the premises and of the benefits to be derived by the said Town from the distribution and supply of illuminating gas * * * to and throughout the whole Town of Gravesend, as well as and in addition to the said Coney Island '' (defendant's Exhibit B), the plaintiff has no claim for damages for unlawful occupation of the bed of the creek or for an injunction.

The Town of Gravesend, by virtue of grants in colonial and Dutch periods, which grants were protected from extinguishment by the Constitution, owned the bed of all navigable waters within the confines of the town of Gravesend; that has been judicially settled in several cases (*Somerville* v. *City of New York*, 78 Misc. 203; *Somerville* v. *City of New York*, 89 Misc. 188; *Nevins* v. *Friedauer*, 113 Misc. 437, mod. 198 App. Div. 250; *Harway Improvement Co.* v. *Partridge*, 113 Misc. 788, 203 App. Div. 174, affd. 236 N. Y. 563).

In this case we are not concerned with the rights of defendant as a riparian owner but solely with the issue as to whether the grants of 1877 gave to the defendant or its predecessors the right to lay the pipes in the bed of the navigable creek.

The defendant's rights are not claimed to have arisen merely from riparian ownership.

The issue concerning the bridge raises an additional problem. It was built in 1907, pursuant to purported authority contained in a report dated January 26, 1907 (plaintiff's Exhibit 13 in evidence), from the department of docks and ferries of the City of New York, which said: " In relation to the lift bridge proposed to be erected thereat, it is recommended that permission be granted, upon the condition, however, that the consent and approval of the plans be first obtained from the United States Government authorities for the reason that this portion of Coney Island Creek is a navigable stream and, in my opinion, such consent is necessary."

It is significant that the letter (plaintiff's Exhibit 13-A) of purported permission expressly limits itself to " insofar as permission from this Department is necessary ", and recommended permission for construction of " a sheet pile bulkhead and  *  *  *  gas and water mains,  *  *  *  and two 30-inch gas mains and one 8-inch water pipe 3 feet below the bed of Coney Island Creek,".

It is a fact conceded in this case that no request was made nor approval granted for the erection of this bridge from the War Department (S. M. p. 8). This was confirmed by a letter dated January 29, 1907 (plaintiff's Exhibit 13-A), which said as follows: " I beg to advise that by direction of the Commissioner permission is hereby granted you, insofar as permission from this Department is necessary, to lay two (2) 30-inch gas mains and one (1) 8-inch water pipe three feet below the bed of Coney Island Creek; and also to construct a sheet pile bulkhead and lift-bridge at Neptune Avenue ".

The present action stems from a project created under the laws of this State and of the United States whereunder the War Department undertook the clearance of " a channel 12 feet deep at mean low water, and from 70 to 150 feet wide from Gravesend Bay to Shell Road."

This project was adopted " subject to a condition that no dredging was to be performed beyond a bridge providing inadequate clearance for navigation, and further, that the owners of the bridges, or other local interests, would have to perform the

dredging under the bridges themselves.'' (S. M. p. 10.) Because of the impossibility of dredging under the bridge, which the court finds as an established fact in this case, work was stopped just west of the bridge and the War Department has been unable to complete the project for the remaining 1,150 feet to the present end of the creek.

The city now claims that the bridge and gas pipes constitute impediments to navigation of the navigable creek. In its present condition, the bridge, originally constructed as a lift bridge, has become a permanent structure by reason of the attachment of gas mains to it after 1925. The presence of the gas pipes in the bed of the creek prevented the completion of the project and thereby constitutes a public nuisance.

It is a conceded fact in this case that since 1907 no further permit, grant or franchise was obtained from the City of New York for the operation of this bridge (S. M. p. 29), nor from the War Department.

Testimony has been offered showing the use of this waterway from its mouth in Gravesend Bay up to this bridge. It is conceded that no vessel larger than a rowboat or motorboat can pass under the bridge in its present condition. While the use of this waterway is not extensive, the rights of the riparian owners of the upland above the bridge to the end of the stream cannot be taken or destroyed by this defendant.

Pictures of the bridge as presently existing have been shown to the court (plaintiff's Exhibits 9, 10). The submerged gas pipes are 182 feet long and cover a width of eight feet and consist of two thirty-inch mains imbedded in the creek to the west of the lift bridge (plaintiff's Exhibit 11). There are a twenty-inch gas main, two six-inch water mains and a three-inch cable conduit across the bridge and permanently affixed thereto as shown by plaintiff's Exhibit 12. As a result the bridge is now used solely for foot passengers and for transportation of light freight to the defendant's plant. While the public is not excluded therefrom, there is a sign restricting the use thereof. The bridge terminals rest on the private property of the defendant.

The first of the pipes across the bridge was laid in 1925 (S. M. p. 84), but was so constructed by means of bolted flanges that by unbolting the flanges and regulating valves, the bridge could still be operated as a lift bridge. After the other pipes were added the bridge could no longer be used in that capacity. Testimony has been offered by the defendant that conversion of the

present existing pipes could be made at a minimum cost so that the bridge can once again be operated as a lift bridge (S. M. p. 87). However, lifting operations would consume at least one hour. It has also been testified to, by cross-examination of defendant's witnesses, that the pipes can be physically rerouted, at a great cost around the creek, that is, about 1,150 feet to the end of the creek across the land and back 1,150 feet (S. M. pp. 89, 90).

Access to either side of the defendant's property is now possible by walking around the creek, for since 1936, the creek which formerly meandered to Sheepshead Bay is now ended at Shore Parkway.

It is not clear from the evidence in this case when the gas pipes were actually laid in the bed of Coney Island Creek. However, it may be assumed, from testimony concerning the size of the pipes now there, and from plaintiff's Exhibit 13-A that substantially the pipes were laid down after 1907.

The pertinent contents of the exhibits, the testimony and the respective claims have all been set forth so that the defendant's claims could be exhaustively studied.

It is abundantly clear that no express legal grant was ever obtained, either by the defendant, or its predecessors in title, to lay pipes submerged in the bed of the creek or over the creek, or to construct a bridge thereon. The report dated January 26, 1907 (plaintiff's Exhibit 13), and the letter dated January 29, 1907 (plaintiff's Exhibit BA), did not effectually operate as a grant of the use of the bed of the navigable creek to the detriment of the public. Only an express legislative grant could permanently deprive the sovereign power of its duty to hold navigable streams in trust for the public good. The department of docks and ferries had no such legislative power.

The Town of Gravesend was created by virtue of early colonial patents, the effect of which was to convey title to the town to all unappropriated lands and lands under water. That principle was cited in *Town of Brookhaven* v. *Smith* (188 N. Y. 74, 78): " but it took and held the thing granted in its corporate political capacity, and as the representative of the crown, or of the colonial government, to be administered for the public good. (*De Lancey* v. *Piepgras*, 138 N. Y. 26.) Upon the organization of the state government, it continued to hold the soil of the bay in that capacity, and, representatively, for the benefit of the members of the community."

The defendant's contention that the grants of 1877 expressly gave it the right to lay pipes across the bed of the creek, and that the power was a necessary concomitant of the express powers granted is without legal basis, because it does not appear that the body granting the powers had jurisdiction to permit the laying of pipes on the bed of the creek or to permit the construction of a bridge across the creek in such a manner as to obstruct navigation thereof to the detriment of the public good.

Chapter 56 of the Laws of 1830, entrusted the commissioners of highways of Kings County with " the care and superintendence of the highways and bridges therein " and prescribed as their duties for repair of roads, regulation of roads, public landings and watering places, and the repair of highways and bridges which are or may be erected over streams intersecting highways.

No provision is made in the act or in the amendments thereof (L. 1838, ch. 229; L. 1857, ch. 181; L. 1858, ch. 260) giving the commissioners of highways the power to issue any licenses, grants or franchises in the highways or bridges or to obstruct navigation on Coney Island Creek, for the exclusive use of this defendant.

Section 18 of chapter 37 of the Laws of 1848, as amended by chapter 95 of the Laws of 1871, authorizes the incorporation of gas companies which " shall have power to lay conductors for conducting gas through the *streets, lanes, alleys, squares and highways* " (emphasis added) in towns upon obtaining the " consent of the municipal authorities " of said town and under such reasonable regulations as may be prescribed by such municipal authorities (plaintiff's memorandum, p. 8).

As readily seen, the language of the 1848 act, and the first 1877 grant, almost identical insofar as the expression " streets, lanes, alleys, squares and highways " is used, made no mention of streams, creeks or waterways nor bridges, nor obstruction of navigation on navigable waterways. The second 1877 grant, broader in language, as above set forth, also makes no mention thereof.

It not having been shown that the commissioners of highways had power to expressly convey any interest in the bed of any navigable waterway, the court cannot say now that a right was created by implication, especially where obstruction of the navigable waterway would be caused thereby. And even if, as defendant contends, express power did exist, a grant of any right to the use of the bed of the navigable waterway must be

clear and unequivocal and cannot be created by implication. " The theory upon which this decision rests has been well expressed in the *Burbank* case where we said: ' the whole theory of prescription depends upon a supposed grant. No such grant can be presumed where a grant would be unlawful or contrary to law * * * where no express grant can be allowed, the law will not resort to the fiction of an implied grant so as to create a prescriptive right.' " (*City of New York* v. *Wilson & Co.*, 278 N. Y. 86, 97.)

In *West Virginia Pulp & Paper Co.* v. *Peck* (189 App. Div. 286) the court said (pp. 293–294) : " The rule is well established that nothing passes in such grants as the above by implication or except such as is expressed in unequivocal language. The patentee does not by implication take the bed of the river to the exclusion of the State. Every intendment is to be made in favor of the State. [Citing cases.] In the light of such rule we must construe the above description and thus construed it does not in terms or by implication convey the bed of the river. Nothing appears from the grant indicating such an intent. It is a well-known fact that the Colonial Government as a matter of policy studiously avoided granting the river bed (*Canal Commissioners* v. *People,* 5 Wend. 423, 460), and it is extremely improbable that Governor Dongan in this instance departed from that policy to the extent of conveying twenty-two miles of river bed in a single grant to private individuals there being nothing to indicate any reason therefor."

As recently as May 15, 1951, the Appellate Division of the first department, held that a grant of land by a sovereign, within the boundaries of which there is a stream in which the tide ebbs and flows, does not, unless there is evidence indicating a contrary intent, carry with it title to the bed of the stream (*Matter of City of New York* [*Schurz Ave.*], 278 App. Div. 309).

In *Sage* v. *Mayor of City of New York* (154 N. Y. 61) the court said (p. 80) : " The common law recognizes navigation as an interest of paramount importance to the public. Thus, when the king used to grant an exclusive right of fishing in navigable tidewater, as once he lawfully might, if, in the course of time, the nets or weirs interfered with navigation, they became a nuisance and could be abated as such. The grant was silent upon the subject, yet the courts held that whatever impeded the superior right of navigation was impliedly excepted from the effect of the grant. * * * The purpose for which the supreme authority holds the title to lands under tidewater is

inconsistent with the power to grant any easement or right to those lands that will prevent it, when the necessities of commerce demand, from 'wharfing out' to deep water, so that vessels can load and unload and the interests of navigation be promoted.''

It follows that because the commissioners of highways did not have power to expressly convey any permanent interest to land on the bed of the navigable creek, such power could not be claimed to have arisen by mere inference.

The department of docks and ferries' letter dated January 29, 1907 (plaintiff's Exhibit 13-A), and the subsequent construction of the bridge and the laying of the pipes in accordance therewith gave to defendant no claim to rights under adverse possession. It is clearly expressed therein that the department's permission is granted upon condition that the consent and approval of the plans be obtained from the United States Government authorities, for the reason that Coney Island Creek was a navigable stream. It is a conceded fact in this case that no such permission was ever obtained. Construction of the bridge without permission cannot create a right in defendant to continue the use of the bridge, it having violated the very terms of the authority upon which it relies. The failure of the plaintiff or any of its officers or agents to resist construction of this unlawful bridge, or to have compelled removal in years gone by cannot operate to confer a right never actually created.

A similar principle was noted in *City of New York* v. *Wilson & Co.* (278 N. Y. 86, 95–96, 99–100, *supra*) where the court said: '' The application for the permit to erect a building has little value, if any, in proving adverse possession. Any person whether he be fee owner or lessee or licensee of the city must obtain a permit before erecting a building or waterfront structure. Nor is it material that he states wrongfully that he is the owner of the premises in his application, since the jurisdiction of the Building Department does not extend to the examination of titles. Likewise proof of payment of taxes is not conclusive proof of adverse possession nor is it binding on the city (*Consolidated Ice Co.* v. *Mayor,* 166 N. Y. 92, 101; *Harway Improvement Co.* v. *Partridge,* 203 App. Div. 174, 178; affd., 236 N. Y. 563), although payment of taxes if coupled with other acts may constitute some evidence of hostile possession. (See *People* v. *Ladew,* 237 N. Y. 413, 425.) Moreover, statements of city officials do not estop the city and, therefore, cannot constitute conclusive evidence of adverse possession. (*New York City Employees'*

*Retirement System* v. *Eliot,* 267 N. Y. 193; *New York Tel. Co.* v. *Bd. of Education,* 270 N. Y. 111.) * * * The city is not estopped from asserting its rights by these inconsistent acts, since the errors of law of city employees and officers are not binding upon the city. (*New York City Employees' Retirement System* v. *Eliot, supra; New York Tel. Co.* v. *Bd. of Education, supra.*) "

The bridge is not used in the business of the manufacture of gas. It is presently used only as a short cut for employees to get to the plant. Some minor deliveries are made thereby. There is, however, ample access around the Shore Parkway and therefore the use of this structure, which clearly obstructs present navigation and the projected increased use thereof is neither reasonable nor necessary because it does not serve the public good. Unless a valid franchise creates a special right for the public good, its continuance should be abated.

Strict construction of the 1877 grant precludes any extension thereof by implication or inference because the subject matter of the purported franchise relates to what is known as *jus publicum,* or the right which a sovereign holds in trust for public use, such as the control of navigable waters (*Dermott* v. *State of New York,* 99 N. Y. 101, 107 [1885]). Thus a railroad company's franchise did not empower it to construct a bridge over navigable water (*People* v. *Delaware & Hudson Co.,* 213 N. Y. 194). The fact that the bridge has been permitted to continue in existence for a long period of time and the pipes have been permitted to remain on the bed of the creek for a long period of time does not create any right to continue obstruction of this creek.

In any event, if it be assumed that the grants were broad enough to permit construction of the pipes and bridge, public necessity now has altered conditions to require use of the creek to permit continuation and completion of the dredging operations, the incumbrances must be removed by the defendant at its own expense, because the right of the defendant to exercise its franchise is inherently subject to reasonable regulation and control when the public safety and convenience requires. This rule was clearly stated in *New York City Tunnel Authority* v. *Consolidated Edison Co.* (295 N. Y. 467, 474-475) where the court said: " The ' fundamental common-law right applicable to franchises in streets ' is that a utility company must relocate its facilities in the public streets when changes are required by public necessity. (*Transit Comm.* v. *Long Island R. R. Co.*

[*Bell Ave.* case], 253 N. Y. 345, 353.) The rule finds succinct statement in that case (253 N. Y., at p. 351) : ' Although authorized to lay its pipes in the public streets, the company takes the risk of their location and is bound to make such changes as the public convenience and security require, at its own cost and charge. (*Chicago, Burlington & Quincy R. R. Co.* v. *Chicago,* 166 U. S. 226; *New Orleans Gas Light Co.* v. *Drainage Commission,* 197 U. S. 453; *Chicago, Burlington & Quincy R. R. Co.* v. *Drainage Commrs.,* 200 U. S. 561; *Lake Shore & Michigan Southern R. Co.* v. *Clough,* 242 U. S. 375; *Chicago, Milwaukee & St. Paul Ry. Co.* v. *City of Minneapolis,* 232 U. S. 430; *National Water Works Co.* v. *City of Kansas,* 28 Fed. Rep. 921; *Matter of Petition of Deering,* 93 N. Y. 361; *Chace Trucking Co.* v. *Richmond Light & R. R. Co.,* 225 N. Y. 435.) *All these cases are to the point, that these public service corporations maintain their rights in the streets, subject to reasonable regulation and control, and are bound to relocate their structures at their own expense whenever the public health, safety or convenience requires the change to be made.' "* (Emphasis supplied.)

Defendant claims that the commissioners of highways constituted the " municipal authorities " described in chapter 37 of the Laws of 1848, as amended by chapter 95 of the Laws of 1871, as the legislative body required to give its consent for the formation of gas light companies. However, defendant fails to heed the language of the section which limits the powers of gas light companies to the " power to lay conductors for conducting gas through the streets, lanes, alleys, squares and highways, in such city, villages or towns, with the consent of the municipal authorities of said city, villages or towns, and under such reasonable regulations as they may prescribe ".

Defendant has cited *Ghee* v. *Northern Union Gas Co.* (158 N. Y. 510, 513) as authority to show that the commissioner of highways was the " municipal authority " meant. However, firstly, that case concerns municipal authority of the City of New York exercised in a period much later than 1877; and, further, the question of an express grant to lay pipes and to build a bridge over a navigable stream in such manner as to obstruct its navigability was not an issue in that case.

The case of *People ex rel. Woodhaven Gas Light Co.* v. *Deehan* (153 N. Y. 528) is inapplicable for the reason that it does not concern itself with navigable creeks. Assuming that the principle cited in *People ex rel. New York & Richmond Gas Co.* v. *Cromwell* (89 App. Div. 291) is applicable to the extent

that a presumption is raised, by reason of lapse of time, that the consent of municipal authorities has been duly obtained this court points out that the situation therein differs from the instant case, because, here, we are concerned with the issue as to whether a grant was made to the use of the bed of a navigable creek, an issue not presented in that case.

The contention of the defendant that the exercise of its franchise rights to supply gas to the whole town carries with it the incidental power to bridge the creek is without factual basis. The bridge was not constructed until 1907, after those towns had ceased to exist as such, and it is affirmatively shown that the defendant failed to procure the consent of the War Department after the attempted approval by the department of docks and ferries of its projected construction. It did not proceed under the original grants to construct the bridge, but relied upon the report heretofore set forth. Defendant's violation of the conditions set forth therein is self-evident.

The court comes to the conclusion that the plaintiff City of New York is entitled to the relief demanded enjoining the defendant from maintaining the bridge across the creek and the pipes attached thereto and the pipes now lying on the bed of the creek. Accordingly, the defendant is directed to remove the structures within the period of one year from the date of service of a copy of the judgment to be entered herein, together with notice of entry thereof. The claim for monetary damages is disallowed because the benefits derived by the inhabitants of that section of the community outweighs any claim for monetary damages. Furthermore, no competent testimony has been offered by the plaintiff to show its damage. Some testimony has been offered herein to the effect that the pipes if relocated a distance of about thirteen or fourteen feet below the bed of the creek would obviate objection by the plaintiff as presented in the instant action, and that if the bridge were restored to a lift bridge, its obstruction to navigability would no longer be in existence. However, the court is in no position to limit its judgment providing for such disposition. However, if before the entry of judgment herein, the parties are able to stipulate to any modification of the directions herein contained which would suit both the interests of the plaintiff and the defendant, the court would modify its directions accordingly. It is suggested that the actual situation as pictured by the plaintiff is not as serious as claimed. The court is inclined to agree with that view and encourages negotiation between the parties before the entry of final judgment. Settle judgment on notice.